UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| IN THE MATTER OF BULLY 1 (SWITZERLAND) GMBH, AS OWNER, AND NOBLE DRILLING (U.S.) LLC, AS OWNER *PRO HAC VICE*, OF THE *GLOBETROTTER II* | CIVIL ACTION NO. 22-566<br><br>JUDGE ROBERT R. SUMMERHAYS<br><br>MAGISTRATE CAROL B. WHITEHURST |

### CLAIMANT YURI REMEDIO'S ANSWER, DEFENSES, CLAIM, AND THIRD PARTY COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Claimant, Yury Remedio, a person of the full age of majority who is a resident of and domiciled in the parish of Lafayette, State of Louisiana, who files this Answer, Defenses, Claim to the Complaint for Exoneration from or Limitation of Liability of Bully 1 (Switzerland) GmbH ("Bully 1"), as Owner, and Noble Drilling (U.S.) ("Noble"), as Owner *Pro Hac Vice*, of the *GLOBETROTTER II*, (collectively referred to as "Petitioners in Limitation"), and Third Party Complaint against Shell Oil Company and Shell Offshore, Inc., as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

The Petitioners in Limitation are not entitled to exoneration from or limitation of liability in these proceedings because they had privity and knowledge of the unsafe, negligent, and unseaworthy conditions of the *GLOBETROTTER II* upon which this accident occurred and the negligent operating procedures employed on the *GLOBETROTTER II*, which were company policy and practice, and which caused the Claimant's injuries on or about August 28, 2021.

1

**THIRD DEFENSE**

The Claimant, Remedio, asserts that Petitioners in Limitation's management knew of and approved the unsafe practices and unseaworthy conditions aboard the *GLOBETROTTER II* prior to the time the vessel was instructed to engage in assisting the *GLOBETROTTER II*, namely that the *GLOBETROTTER II*'s crew failed to observe hazards and employed unsafe customs in the navigation of its vessels.  Said unsafe practices and methods of performing vessel work were company policy, custom, and practice and caused or contributed to the accident which is the basis of this suit and the losses resulting therefrom.

**FOURTH DEFENSE**

The Petitioners in Limitation have failed to comply with the requirements of the Limitation of Liability Act, 46 U.S.C. § 30501*, et seq.*, including, without limitation, the failure to deposit adequate and proper security, which bars the Petitioners in Limitation's request for limitation of liability. Claimant reserves the right to further challenge the adequacy / sufficiency of the security posted by the Petitioners in Limitation in this and/or any other related litigation.

**FIFTH DEFENSE**

The events culmination in injury to Yury Remedio were the result of the negligence, fault, want of due care, willful, wanton, and/or reckless conduct, and/or gross negligence on the part of the Petitioners in Limitation, solely or in concert with others is responsible, and/or the unseaworthiness of the vessel and/or other vessels within the flotilla and/or under common operation, control, supervision and/or enterprise at all pertinent times, all of which was within the privity and knowledge of the Petitioners in Limitation, for those reasons, the Complaint for Exoneration From or Limitation of Liability should be denied.

**SIXTH DEFENSE**

The events culminating in the injury of Yury Remedio were not the result of any

negligence, fault or want of due care on the part of Yury Remedio or those for whom he may be responsible.

## INSUFFICIENCY OF FUND AND SECURITY

Claimant asserts that the fund and security provided by the Petitioners in Limitation are insufficient and moves that the security given by the Petitioners in Limitation be increased on the ground that they are less than the value of the Petitioners in Limitation's interest in the vessel and pending freight and avers:

1. There is abundant evidence that the "Vessel valuation" relied upon by the Petitioners in Limitation is neither comprehensive, complete or accurate and said "Vessel valuation" grossly underestimates the value of the GLOBETROTTER II.

2. For example, attached as "Exhibit 1" is a copy of the Certificate of Ownership and Encumbrance issued by the Liberia Maritime Authority of the Republic of Liberia, there is a "First Preferred Ship Mortgage" dated February 2021 and granted by Bully 1 (SWITZERLAND) GMBH to JPMORGAN CHASE BANK, NA, as collateral agent and surety trustee in the total amount of "One Billion Three Hundred Fifty Million and No/100 United States Dollars (USD $1,350,000,000) under the Credit Agreement, the Guaranty and Collateral Agreement, and other Credit Documents" found at "E.S.T. in Book PM 73 at Page 191."

3. Said Certificate of Ownership and Encumbrance also evidences that the GLOBETROTTER II is security for a "Preferred Ship Mortgage" in the total amount of $216,000,000 granted by granted by Bully 1 (SWITZERLAND) GMBH to "U.S. Bank National Association as Collateral Agent and Security Trustee."

4. Moreover, the "Vessel valuation" does not comply with nor satisfy the requirements of proof as is contemplated by 28 U.S.C. 30501, et seq., in that said "Vessel valuation:"

3

    a. does not address whether claims by Nobel Drilling and/or Bully 1 have resulted in a monetary recovery for damage to the GLOBETROTTER II;

    b. does not address nor consider, other than in a conclusory way, the GLOBETROTTER II's "freight then pending" as contemplated by 46 U.S.C.A. § 30511(b)(1)(A), and which the United States Supreme Court has for over one hundred and twenty-five years to mean the earnings of the voyage. See *The Main v. Williams*, 152 U.S. 122, 14 S. Ct. 486, 38 L. Ed. 381, 2007 A.M.C. 2966 (1894).

5. All of these facts reveal that the amount that the "Vessel valuation" purports to establish as the "post-incident value" of the GLOBETROTTER II is facially deficient and insufficient and is insufficient to carry out the provisions of the limitations statutes relating to claims in respect of loss of life or bodily injury.

6. Pursuant to Federal Rules of Civil Procedure, Supplemental Admiralty Rule F(7) it is respectfully requested that this Court "cause due appraisement to be made of the value of the plaintiff's interest in the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction."

7. Claimant reserves the right to supplement these paragraphs with other evidence of the value and undervaluation of the GLOBETROTTER II as needed and the case may be.

## ANSWER

And now, with full reservation of all defenses set forth above, the Claimant, Remedio, answers the allegations contained in the numbered paragraphs of the Complaint as follows.

1.

Claimant admits the allegations in Paragraph 1 insofar as they relate to the status of Bully 1 as a Swiss company. Claimant denies the remaining allegations contained Paragraph 1 for lack of information sufficient to justify a belief therein.

2.

Claimant admits the allegations in Paragraph 2 insofar as they relate to the status of Noble as a Delaware limited liability company. Claimant denies the remaining allegations contained Paragraph 2 for lack of information sufficient to justify a belief therein.

3.

Claimant admits the allegations of Paragraph 3 to the extent they relate to Noble's and Bully 1's status as the owners of the *GLOBETROTTER II*. Claimant denied the remaining allegations contained in Paragraph 3 as they draw legal conclusions and for lack of information sufficient to justify a belief therein.

4.

Claimant admits the allegations of Paragraph 4 insofar as they relate to the *GLOBETROTTER II*'s status.  The remaining allegations of Paragraph 4 are denied for lack of information sufficient to justify a belief therein.

5.

Claimant denies the allegations of Paragraph 5.

6.

Claimant admits the allegations of Paragraph 6 to the extent they indicate that Hurricane Ida formed in the Gulf during the week of August 23, 2021. Claimant denies the remaining allegations of Paragraph 6 insofar as they improperly characterize the formation of the storm and for lack of sufficient basis to justify a belief therein.

7.

Claimant admits the allegations in Paragraph 7 insofar as they reflect the filing of lawsuits arising out of the Claimants in Limitation's negligence in permitting the *GLOBETROTTER II* to be affected by Hurricane Ida. The remaining allegations of Paragraph 7, including – but not limited

to – any denial of liability and/or any denial of any failure to pay maintenance and cure are denied.

8.

Claimant denies the allegations in Paragraph 8 for lack of information sufficient to justify a belief therein.

9.

Claimant denies the allegations of 9.

10.

Claimant denies the allegations of 10 insofar as they infer or state that Claimants in Limitation bear no fault in causing the damages as set forth by the Claimant, Remedio, below. Insofar as Paragraph 10 admits damages and/or serious injuries were caused to several individuals, the same are admitted.

11.

Paragraph 11 is admitted to the extent it sets forth the status of certain parties who have commenced litigation arising out of the accident at issue. Subject thereto, all remaining allegations of Paragraph 11 are denied.

12.

Paragraph 12 does not require a response by the Claimant; to the extent a response is deemed required, Claimant denies that the Petitioners in Limitation are entitled to the benefit of limitation and/or exoneration.

13.

Paragraph 13 is admitted to the extent that venue is appropriate in the Western District Louisiana (Lafayette Division). To the extent the allegations of Paragraph 13 contain any other legal conclusions, the same are denied.

14.

Paragraph 14 not require a response by the Claimant as it contains a legal conclusion; however, to the extent a response is deemed required, Claimant denies that the security posted is adequate.

15.

Paragraph 15 not require a response by the Claimant as it contains a legal conclusion; however, to the extent a response is deemed required, Claimant denies that the security posted is adequate.

16.

Claimant denies Paragraph 16 in its entirety, including the alternative defense that the Petitioners in Limitation are entitled limitation of liability as provided in 46 U.S.C. §§ 30501-30512.

17.

Claimant denied Paragraph 17 in its entirety, including any allegations or defenses asserting limitation of liability or other relief as provided in 46 U.S.C. §§ 30501-30512.

18.

Paragraph 15 not require a response by the Claimant. To the extent that a response is deemed required, the allegations are denied.

## **CLAIM**

And now, reserving all rights to prosecute his Jones Act, maintenance and cure, and general maritime claim for unseaworthiness in state court, in accordance with the provisions of Rule 9(h), Rule F(5) of the Supplemental Rules of Certain Admiralty and Maritime Claims, and the general maritime law of the United States, Claimant, Yury Remedio, hereby asserts his Claim against Bully 1 (Switzerland) GmbH ("Bully 1"), as Owner, and Noble Drilling (U.S.) ("Noble"), as Owner *Pro*

*Hac Vice*, of the *GLOBETROTTER II*, (collectively referred to as "Petitioners in Limitation"), and, in support of his claim, respectfully represents the following.

I.

At all times mentioned hereinafter, Remedio was employed by Advanced Tool Supply ("ATS") of Broussard, Louisiana. Remedio was Jones Act Seaman working as an offshore technician in the Gulf of Mexico, off the cost of Louisiana and assigned to the *GLOBETROTTER II*.

II.

At all times relevant herein, the Petitioners in Limitation owned, operated, manned, managed, and controlled the deep-water drillship *GLOBETROTTER II*, which was working in the Gulf of Mexico off the coast of Louisiana for the benefit of, and under the direction of, the Petitioners in Limitation.

III.

At all times relevant herein, and in the days leading up to August 28, 2021, Hurricane Ida entered the Gulf of Mexico on a path directed towards the Louisiana coastline. During this period, the National Hurricane Center and the European Hurricane Model projected Hurricane Ida's probable landfall to be along the Louisiana coast between Morgan City and Grand Isle Louisiana. As the storm grew, Hurricane Ida's sustained winds were recorded as high as 150 mph with gusts up to 165 mph. On August 28, 2021, Hurricane Ida – as predicted – entered the Gulf and continued moving towards Southeast Louisiana as projected.

IV.

At the same time, the *GLOBETROTTER II* and her crew continued operating in the Gulf of Mexico in the direct path of Hurricane Ida, despite the numerous warnings of clear and present danger posed by the quickly approaching category 5 hurricane. The Petitioners in Limitation

willfully defied and disregarded all weather information available to them, including the broadcasted weather information provided to mariners by the National Weather Service and National Hurricane Center.

V.

In the hours preceding Hurricane Ida's arrival at the *GLOBETROTTER II*'s location in the Gulf of Mexico, the *GLOBETROTTER II* unlatched from its sub-sea drilling activities and headed directly into the approaching storm. In failing to heed the clear weather information provided to them, the Petitioners in Limitation placed the *GLOBETROTTER II* and her crew almost directly in the middle of the storm, within 10 miles of the eye of the hurricane. As a result, *GLOBETROTTER II* and her crew were exposed to 150 mph winds, gusts up to 165 mph, and 80-95 foot sea swells.

VI.

The environment to which the crew of the *GLOBETROTTER II* was subjected during the storm was nothing short of terrifying. As the *GLOBETROTTER II* listed hopelessly through the above and unrelenting high seas and winds, the crew of the *GLOBETROTTER II* were tossed around like rag dolls. The *GLOBETROTTER II* was swaying so substantially from side to side that her crew were – at many times – forced to walk on her walls rather than on the interior walkways. The weather conditions were so severe that the *GLOBETROTTER II* nearly capsized numerous times, leaving her crew helpless, terrified, and beaten: put simply, the crew all believed they were going to die.

VII.

That the *GLOBETROTTER II* weathered the storm is nothing short of miraculous. Upon returning to shore, many of the crew aboard the *GLOBETROTTER II* were left so terrified by the this near-death experience that they refuse to return to sea.

VIII.

The injuries suffered by Remedio were caused by the legal fault, negligence, negligence per se, carelessness, and omissions of duty, as well as by recklessness, gross negligence, and willful and wanton disregard for the safety of the crew of the crew of the *GLOBETROTTER II* by the Petitioners in Limitation.  In no way did any conduct or actions by Remedio contribute to his injuries which were caused by this traumatizing failure of the Petitioners in Limitation.

IX.

The negligence and fault of the Petitioners in Limitation is shown more particularly in and the unseaworthiness of the vessel in question in the following non-exclusive particulars:

   A. In failing to instruct, train, and supervise the crew of the *GLOBETROTTER II* or, in the alternative, in failing to adequately instruct, train, and supervise the crew of the *GLOBETROTTER II*;

   B. In failing to place competent personnel in charge of the *GLOBETROTTER II* and its crew;

   C. In failing to timely and seasonably order the *GLOBETROTTER II* to move off its drilling location and out of the path of Hurricane Ida such that the vessel and its crew could be spared from the storm;

   D. In failing to timely and seasonably move the *GLOBETROTTER II* off its drilling location and out of the path of Hurricane Ida such that the vessel and its crew could be spared from the storm;

   E. In failing to promulgate, adopt, and enforce safety practices, policies, and procedures concerning hazard mitigation during a hurricane or, in the alternative, in failing to promulgate, adopt, and enforce adequate safety practices, policies, and procedures concerning hazard mitigation during a hurricane;

   F. In failing to timely and seasonably order the evacuation of the *GLOBETROTTER II* and its crew of all nonessential personnel well in advance of the known, projected approach of Hurricane Ida;

   G. In failing to properly train, instruct and guide the vessel operator as to how to safely make and promptly return to land upon being provided with the projections for the path and strength of Hurricane Ida such that this incident would have been avoided;

   H. In exercising poor judgment and unsafe vessel operation on the part of the vessel

operators, land-based vessel owners/owners *pro hac vice*, and land-based corporate management in the days leading up to this storm;

I. In violating applicable United States Coast Guard and BSEE regulations; and

J. In failing to provide a seaworthy vessel to the crew of the *GLOBETROTTER II*, including Remedio.

X.

All of the above items, A through J, of the subject accident, were the direct, proximate, contributing, and legal causes of the accident subject herein, which have been the cause of damages sustained by Remedio, for which Remedio is allowed to recover money damages reasonable within the premises, pain, suffering, mental anguish, past and future economic losses, past and future medical and life care expenses, and to the extent any of the above acts and omissions were reckless, malicious, willful and/or wanton, punitive damages, as well as wrongful death damages arising therefrom including loss of society and companionship, loss of performance of material services, loss of love and affection, and mental anguish and grief.

XI.

The fault and/or negligence of the Petitioners in Limitation as stated above was reckless, wanton and grossly negligent thus entitling petitioner to recover punitive damages herein.

### THIRD PARTY COMPLAINT

AND NOW, in further response, and out of an abundance of caution, Claimant, Yury Remedio respectfully submits the following Third Party Claim:

1.

Made third-party defendants herein are the following companies/corporations:

A. Shell Oil Company, a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Houston, Texas, and a designated office in Baton Rouge, Louisiana, which contracted with the Petitioners in Limitation to engage in the production of minerals in the Gulf of Mexico.

11

    B. Shell Offshore, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Houston, Texas, and a designated office in Baton Rouge, Louisiana which contracted with the Petitioners in Limitation to engage in the production of minerals in the Gulf of Mexico.

2.

Plaintiff specifically incorporates and adopts by reference thereto Paragraphs I through VII of the Claim asserted above.

3.

At all times relevant herein, Shell Oil Company and Shell Offshore, Inc. (collectively the "Shell Defendants") were the owners of the P012 well located in Mississippi Canyon Block 809, who contracted with the Petitioners in Limitation to conduct temporary abandonment operations at the said well.

4.

Like the Petitioners in Limitation, the Shell Defendants were in possession of information showing that the area in which operations were being conducted was directly in the path of the incoming Hurricane Ida. Nonetheless, and as is detailed above with respect to the Petitioners in Limitation, the Shell Defendants failed to act on the information which was readily available to them and which unquestionably demonstrated that the *GLOBETROTTER II* and its crew were in imminent danger with respect to the rapidly approaching and strengthening Hurricane Ida.

5.

Specifically, the Shell Defendants were negligent and at fault for the above-described harm to the Claimant, Remedio in the in the following non-exclusive particulars:

    A. In failing to instruct, train, and supervise the crew of the *GLOBETROTTER II* or, in the alternative, in failing to adequately instruct, train, and supervise the crew of the *GLOBETROTTER II*;

    B. In failing to place competent personnel in charge of the *GLOBETROTTER II* and its crew;

    C. In failing to timely and seasonably order the *GLOBETROTTER II* to move off its drilling location and out of the path of Hurricane Ida such that the vessel and its crew could be spared from the storm;

    D. In failing to timely and seasonably move the *GLOBETROTTER II* off its drilling location and out of the path of Hurricane Ida such that the vessel and its crew could be spared from the storm;

    E. In failing to promulgate, adopt, and enforce safety practices, policies, and procedures concerning hazard mitigation during a hurricane or, in the alternative, in failing to promulgate, adopt, and enforce adequate safety practices, policies, and procedures concerning hazard mitigation during a hurricane;

    F. In failing to timely and seasonably order the evacuation of the *GLOBETROTTER II* and its crew of all nonessential personnel well in advance of the known, projected approach of Hurricane Ida;

    G. In failing to properly train, instruct and guide the vessel operator as to how to safely make and promptly return to land upon being provided with the projections for the path and strength of Hurricane Ida such that this incident would have been avoided;

    H. In exercising poor judgment and unsafe vessel operation on the part of the vessel operators, land-based vessel owners/owners *pro hac vice*, and land-based corporate management in the days leading up to this storm; and

    I. In violating applicable United States Coast Guard and BSEE regulations.

6.

All of the above items, A through I, of the subject accident, were the direct, proximate, contributing, and legal causes of the accident subject herein, which have been the cause of damages sustained by Remedio, for which Remedio is allowed to recover money damages reasonable within the premises, pain, suffering, mental anguish, past and future economic losses, past and future medical and life care expenses, and to the extent any of the above acts and omissions were reckless, malicious, willful and/or wanton, punitive damages, as well as wrongful death damages arising therefrom including loss of society and companionship, loss of performance of material services, loss of love and affection, and mental anguish and grief.

7.

The fault and/or negligence of the Shell Defendants as stated above was reckless, wanton and grossly negligent thus entitling petitioner to recover punitive damages herein.

WHEREFORE, Claimant, Yury Remedio having fully answered, prays that upon further proceedings the Court should enter judgment against the Petitioners in Limitations and in favor of the Claimant, Yury Remedio, finding that the Petitioners in Limitation are not entitled to limitation of or exoneration from liability, with all costs of this matter taxed to the Petitioners in Limitation. Additionally, and out of an abundance of caution, Claimant, Yury Remedio, prays for reasonable relief and/or damages against Third Party Defendants, Shell Oil Company and/or Shell Offshore, Inc., which arise out of their negligence in causing the aforesaid injuries and damages to Claimant, Yury Remedio. Solely to the extent the Claimant, Yury Remedio, is not allowed to proceed on his claims against the Petitioners in Limitation and/or Shell Oil Company and/or Shell Offshore, Inc., in state court upon making the proper motion and stipulation, Claimant, Yury Remedio prays for a trial by jury herein as to all issues triable by a jury and prays for damages, pre-judgment interest, and all other relief to which he is entitled.

Respectfully submitted,

BROUSSARD & DAVID, LLC

*/s/ Jerome H. Moroux*

JEROME H. MOROUX (#32666)
SCOTT M. RICHARD (#36643)
557 Jefferson Street
P.O. Box 3524
Lafayette, Louisiana 70502-3524
PH: 337-233-2323
FX: 337-233-2353
EMAIL: jerome@broussard-david.com
COUNSEL FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I, the undersigned, counsel for Plaintiff, do hereby certify that I have this day filed the above and foregoing document using the Court's ECF electronic filing system.

Lafayette, Louisiana, this 7TH day of April, 2022.

*/s/ Jerome H. Moroux*

JEROME H. MOROUX