**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF BULLY 1 | § | CIVIL ACTION NO. 6:22-CV-566 |
| (SWITZERLAND) GMBH, AS | § | |
| OWNER, AND NOBLE DRILLING | § | JUDGE ROBERT R. SUMMERHAYS |
| (U.S.) LLC, AS OWNER PRO HAC | § | |
| VICE, OF THE GLOBETROTTER II | § | MAGISTRATE JUDGE CAROL B. |
| | § | WHITEHURST |

**ANSWER, AFFIRMATIVE DEFENSES, AND CLAIM OF THOMAS D. HEXT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, THOMAS D. HEXT, and files his Answer, Affirmative Defenses, and Claim in response to the Complaint for Exoneration from or Limitation of Liability filed by Petitioners, Bully 1 (Switzerland) GmbH (hereinafter referred to as "BULLY 1"), as Owner, and Noble Drilling (U.S.) LLC (hereinafter referred to as "NOBLE DRILLING"), as Owner *Pro Hac Vice*, of the GLOBETROTTER II (collectively referred to as "Petitioners"), and would show the court the following:

## I.  ANSWER

Respondent/Claimant, THOMAS D. HEXT, files this Answer to Petitioners' Complaint for Exoneration from or Limitation of Liability.

NOW, specifically reserving all defenses asserted herein, including, without limitation, Respondent/Claimant's right to pursue his claim in state court pursuant to the Savings to Suitors clause, 28 U.S.C. §1333, and all state law remedies, Respondent/Claimant responds to the individual Paragraphs of the Complaint for Exoneration from or Limitation of Liability, upon information and belief, as follows:

1.      The allegations contained in Paragraph 1 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

1

2.      The allegations contained in Paragraph 2 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

3.      The allegations contained in Paragraph 3 of Petitioners' Complaint with respect to vessel ownership are denied for lack of sufficient information to justify a belief herein. The remaining allegations contained in Paragraph 3 are a request for relief/ conclusions of law to which no response is necessary from Respondent/Claimant.  However, if a response should be deemed necessary, said allegations are denied.

4.      The allegations contained in Paragraph 4 of Petitioners' Complaint are admitted.

5.      The allegations contained in Paragraph 5 of Petitioners' Complaint are denied.

6.      The allegations contained in Paragraph 6 of Petitioners' Complaint are denied.

7.      The allegations contained in Paragraph 7 of Petitioners' Complaint are admitted.

8.      The allegations contained in Paragraph 8 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

9.      The allegations contained in Paragraph 9 of Petitioners' Complaint are denied.

10.      The allegations contained in Paragraph 10 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

11.      The allegations contained in Paragraph 11 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

12.      The allegations contained in Paragraph 12 of Petitioners' Complaint are a request for relief/ conclusions of law to which no response is necessary from Respondent/Claimant. However, if a response should be deemed necessary, said allegations are denied.

13.      The allegations contained in Paragraph 13 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

14.     The allegations contained in Paragraph 14 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

15.     The allegations contained in Paragraph 15 of Petitioners' Complaint are denied for lack of sufficient information to justify a belief herein.

16.     The allegations contained in Paragraph 16 of Petitioners' Complaint are denied.

17.     The allegations contained in Paragraph 17 of Petitioners' Complaint are a request for relief/ conclusions of law to which no response is necessary from Respondent/Claimant. However, if a response should be deemed necessary, said allegations are denied.

18.     The allegations contained in Paragraph 18 are denied.  Furthermore, Respondent/Claimant alleges the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, is unconstitutional in that it deprives the Respondent/Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.  Respondent/Claimant further alleges the Limitation of Liability Act is not applicable to the instant case because at all times pertinent herein, the vessel was operated in a willful, wanton, and reckless manner or, in the alternative, the conduct and actions which lead to Respondent/Claimant's injuries took place with the privity and knowledge of the owners, managing owners, owners *pro hac vice*, and/or operators of the vessel(s) involved.

## II.  <u>AFFIRMATIVE DEFENSES</u>

AND NOW, Respondent/Claimant, THOMAS D. HEXT, asserts the following affirmative defenses:

FIRST DEFENSE

3

19.    The Complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).

## SECOND DEFENSE

20.    The Limitation of Liability Act, 46 U.S.C. § 30501 et. seq. is unconstitutional in that it deprives the Respondent/Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

## THIRD DEFENSE

21.    The Limitation of Liability Act, 46 U.S.C. § 30501, et. seq. is unconstitutional in that it deprives the Respondent/Claimant of the right to a trial by jury, guaranteed by the Seventh Amendment to the Constitution of the United States and other applicable laws.

## FOURTH DEFENSE

22.    The limitation fund is inadequate, and the Complaint should be dismissed because Petitioners have failed to deposit adequate security for the vessel identified in the Complaint for Exoneration from or Limitation of Liability.  Pursuant to Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing.  Petitioners' deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

## FIFTH DEFENSE

23.    The Limitation of Liability Act is not applicable to the instant case because at all times pertinent herein, the vessel was operated in a willful, wanton, and reckless manner or, in the alternative, the conduct and actions which lead to Claimant/Respondent's injuries took place

with the privity and knowledge of the owners, managing owners, owners *pro hac vice*, and/or operators of the vessels involved.

SIXTH DEFENSE

24.    To    the    extent    Petitioners'    insurers    attempt    to    avail    themselves    of    the limitation/exoneration defense, Respondent/Claimant asserts that the Limitation of Liability Act is unavailable to insurers of vessel owners under the circumstances.  In the alternative, no *prima facie* case has been made establishing any insurer(s) is entitled to avail themselves of the Limitation of Liability Act.

SEVENTH DEFENSE

25.    The Complaint for Exoneration from or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Respondent/Claimant seeks more definitive statements of the allegations, regardless of the nature, manner, and extent of his Answer and Claim herein.

EIGHTH DEFENSE

26.    The events culminating in the injuries of Respondent/Claimant were the result of the negligence, fault, or want of due care on the part of Petitioners and/or those for whom Petitioners are responsible under common operational control, supervision, and enterprise, all of which was within the privity and knowledge of Petitioners, for which the Complaint for Exoneration from of Limitation of Liability should be denied.

NINETH DEFENSE

27.    Respondent/Claimant further alleges that there was insurance coverage on the vessel insuring Petitioners in the event of an occurrence such as that which is the subject of Respondent/Claimant's claims, and the proceeds of said insurance policy should be included in

5

this limitation proceeding (in the event the Court determines these limitation proceedings are appropriate).

## TENTH DEFENSE

28.     Respondent/Claimant states that the proceeds of any judgment, award, or settlement which may be received by Petitioners from any third party in recompense of any losses or damages sustained herein to the property or interests of Petitioners, as a result of the fault or alleged fault of said third party, must be included in the limitation fund.

## ELEVENTH DEFENSE

29.     In filing this Answer and Claim, Respondent/Claimant specifically reserves all rights to pursue all available claims in state court for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Savings to Suitors" clause, 28 U.S.C. §1333, and all state law remedies.  The filing of this Answer and Claim is in no way a waiver of this right and defense, and Respondent/Claimant is not agreeing to join all issues in this proceeding by filing this Answer and Claim.

## TWELVTH DEFENSE

30.     Respondent/Claimant specifically reserves all rights to pursue all available claims in the forum of his choice for resolution of any and all issues beyond the exclusive jurisdiction of this admiralty court pursuant to the "Savings to Suitors" clause, 28 U.S.C. §1333, and all remedies, and no part of this Answer and Claim is a waiver of this defense or these rights. Respondent/Claimant will move the Court to lift the injunction and stay of proceedings in other forums. *See In re Tetra Applied Tech., L.P.*, 362 F.3d 388 (5th Cir. 2004). Further, pursuant to the holdings of *In re Liverpool, etc. Nav. Co. (Vestris)*, 57 F.2d 176, 179 (2d Cir. 1932) and *The Silver Palm*, 94 F.2d 776, 780 (9th Cir. 1937), upon Respondent/Claimant's failure to obtain

relief in this limitation action (should resolution of this action precede judgment in other actions), Respondent/Claimant hereby asserts and claims his right to have his claims and damages tried to a jury in the court of his choosing.

THIRTEENTH DEFENSE

31.     The purpose of a limitation action is to provide a single forum for determining whether the vessel and its owner are liable at all, whether the owner may in fact limit liability to the value of the vessel and pending freight, and how the funds are to be distributed to the claimant(s).  *See* 46 U.S.C. § 30501, *et seq*.; see also THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 2nd Ed. § 13-5 (1994).  Because of the nature and circumstances of this action, a limitations proceeding is inappropriate and unjustified.

FOURTEENTH DEFENSE

32.     Respondent/Claimant reserves the right to contest the appraisal value of the vessel, the "*GLOBETROTTER II*", its engines, apparel, appurtenances, pending freight, etc., and the adequacy of the security.

FIFTHTEENTH DEFENSE

33.     The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel, and/or owned by the Petitioners.

SIXTEENTH DEFENSE

34.     The protection and indemnity insurer of the Petitioners is not accorded the right by statute to invoke limitation of liability.

III.<u>CLAIM</u>

AND NOW, specifically reserving all defenses asserted herein, including, without limitation, Respondent/Claimant's right to pursue his claims in the forum of his choice pursuant to the Jones Act, 46 U.S.C. §30104, et seq., and the general maritime law of the United States, Respondent/Claimant, THOMAS D. HEXT, files his Claim in the Complaint for Exoneration from or Limitation of Liability filed by Petitioners, BULLLY 1, as Owner, and NOBLE DRILLING, as Owner *Pro Hac Vice*, of the GLOBETROTTER II, and states as follows:

35.    Respondent/Claimant re-urges each and every defense and objection set forth above as if the same were stated herein verbatim.

36.    Respondent/Claimant's cause of action arises under the Jones Act, 46 U.S.C. § 30104, the General Maritime Law of the United States, and any other applicable statute.

37.    Respondent/Claimant, THOMAS D. HEXT is a resident of Vernon Parish, Louisiana.

38.    At all material times, Petitioners, BULLY 1 and NOBLE DRILLING, were the owner, owner *pro hac vice*, and/or operators of the vessel in question, which is referred to as the GLOBETROTTER II.

39.    At all material times, the GLOBETROTTER II was in navigable waters of the Gulf of Mexico.

40.    At all material times, THOMAS D. HEXT, was a Jones Act seaman who contributed to, and aided, the GLOBETROTTER II in its mission on navigable waters.

41.    The accident being sued upon occurred on or about August 29, 2021, while THOMAS D. HEXT served as a crewmember aboard the GLOBETROTTER II.

42.    On the date of incident, Respondent/Claimant, THOMAS D. HEXT, sustained serious and debilitating injuries while working as a seaman and Crane Operator for Petitioners. At all

material times, THOMAS D. HEXT, was working in service of the Petitioners' drillship, the GLOBETROTTER II, and Claimant/Respondent was a member of said vessel's crew.

43.     In the days leading up to the occurrence on or about August 29, 2021, Petitioners and the GLOBETROTTER II became aware of the development of Hurricane Ida yet failed to follow standard hurricane procedures to prepare for the well-known and documented risks of operating in the Gulf of Mexico during hurricane season. Despite monitoring the approach of Hurricane Ida, the GLOBETROTTER II, through the actions and omissions of Petitioners, did not maintain accurate calculations of the time it would take to secure well operations and recover drilling equipment as required and did not allow sufficient time for the vessel to move out of the hurricane's path.

44.     While neighboring vessels and offshore structures executed hurricane preparations to secure operations and evacuate the area, Petitioners, BULLY 1 and NOBLE DRILLING, chose to ignore weather forecasts and readiness procedures.  The GLOBETROTTER II continued to operate as normal, risking the lives of over 100 crewmembers onboard. Meanwhile, Hurricane Ida intensified and continued to track nearer and nearer to the GLOBETROTTER II.

45.     By the time Petitioners finally appreciated and responded to the severity of the situation, the GLOBETROTTER II began last-minute efforts to relocate the vessel out of harm's way, but it was already too late. Foreseeable and expected weather conditions and equipment failures prevented the GLOBETROTTER II from escaping the wrath of Hurricane Ida. After the GLOBETROTTER II was eventually able to unlatch, the vessel ended up heading closer into the center of the storm where it encountered winds and seas of significantly greater intensity.

46.     The force of the storm caused substantial damage to the vessel, including the destruction of SOLAS equipment, such as rescue craft and lifeboats. Watertight doors failed, leading to the

flooding of compartments and machinery spaces while heavy equipment broke loose from brackets and restraints. The vessel's propulsion systems were overstrained and struggled to keep the vessel properly oriented into the worst of the seas, causing them to overheat and shutdown. With the loss of propulsion, the vessel's heading was knocked off course and the vessel was caught in the trough of the waves where it was exposed to extreme rolling. Crewmembers were forced to walk on bulkheads and received a broadside battering from the seas. The shifting of weights from flooded spaces and loose equipment strewn across the deck, as well as the loss of propulsion and extreme rolling, compromised the vessel's stability. In addition, there was a crack in the hull of the ship, leaking water into the cofferdam, critically reducing the vessel's reserve buoyance and survival draft. During this time, the crewmembers of the GLOBETROTTER II were at the mercy of the storm and unable to address the damage taken by the vessel as they too were thrown about in the rough seas.

47.    The Petitioners' actions have caused Respondent/Claimant physical impacts and severe mental anguish and emotional distress and have further left him unfit-for-duty and unable to work as a seaman offshore. Respondent/Claimant was in a zone of physical and mental danger – not by his own volition – and which has unable to work offshore. While onboard the GLOBETROTTER II, Respondent/Claimant faced imminent danger and feared that he would lose his life and never see his family again.

48.    In addition, and in connection with the events described herein on or about August 29, 2021, Respondent/Claimant sustained severe and debilitating injuries, including Post-Traumatic Stress Disorder, among other conditions. During the night, while the GLOBETROTTER II heavily rolled about in the rough seas, Respondent/Claimant was thrown about the interior of the vessel as he tried to weather the storm. Furthermore, Respondent/Claimant continues to suffer

from emotional disturbance, mental distress, Post-Traumatic Stress Disorder, and other psychological symptoms, including anxiety, and sleeping difficulties, as a result of the underlying occurrence described herein.

49.     To the extent that Respondent/Claimant had any pre-existing injuries or medical condition(s) at the time of the occurrence in question, the same was not disabling, and he would respectfully show that such pre-existing condition, if any, was aggravated by the incident made the basis of this suit to such an extent that it became disabling, bringing about the necessity of medical treatment.

<u>CAUSE OF ACTION FOR PETITIONERS' NEGLIGENCE</u>

50.     Respondent/Claimant hereby asserts an action for negligence against Petitioners, BULLY 1 and NOBLE Drilling, under the Jones Act, 46 USC §30104, and/or the General Maritime Law of the United States.

51.     Respondent/Claimant repeats, re-alleges, and adopts the paragraphs above, as if stated herein and further alleges as follows:

52.     On or about August 29, 2021, Respondent/Claimant was employed as a crewmember aboard the GLOBETROTTER II.  Petitioner, BULLY 1, was the owner of the GLOBETROTTER II, and Petitioner, NOBLE DRILLING, was the owner *pro hac vice* of the GLOBETROTTER II.

53.     Petitioners, BULLY 1 and NOBLE DRILLING, owed duties of care in the operation as owner and owner *pro hac vice* of the GLOBETROTTER II.  Petitioners further owed a duty of care to provide a safe working environment and to act reasonably in the maintenance and operation of the GLOBETROTTER II.

54.     At the time of the occurrence on or about August 29, 2021, Petitioners, BULLY 1 and/or NOBLE DRILLING, acting through their respective officers, agents, servants and/or employees,

were careless and negligent in breach of the duties owed to Respondent/Claimant, THOMAS D.

HEXT.

55.    Petitioners, BULLY 1 and NOBLE DRILLING, were negligent, negligent per se, grossly

negligent, and/or reckless in the following respects:

> a.   In failing to provide a safe work environment;
> b.   In failing to mitigate against the dangers posed by Hurricane Ida;
> c.   In failing to provide adequate safety equipment and gear;
> d.   In failing to provide adequate safety from Hurricane Ida;
> e.   In failing to timely evacuate the GLOBETROTTER II;
> f.   In failing to properly inspect and maintain the vessel, its equipment and gear, in safe, working condition;
> g.   In operating the vessel in an unsafe and improper manner;
> h.   In choosing to commence fishing operations to retrieve down hole equipment instead of placing packings, which prevented the vessel from being able to flee to safety ahead of the storm;
> i.   In failing to have the vessel moored in a safe area;
> j.   In violating applicable U.S. Coast Guard and/or OSHA rules and regulations;
> k.   In failing to provide prompt and adequate medical attention to Respondent/Claimant; and,
> l.   Other acts of negligence as proven at time of trail.

56.    Respondent/Claimant, THOMAS D. HEXT, suffered severe injuries to his body and mind,

and his injuries were caused by the negligence of Petitioners, BULLY 1 and NOBLE DRILLING,

and/or their respective agents, servants, or employees.  Petitioners are responsible for the negligent

acts and omission of their respective agents, servants, and/or employees.

## CAUSE OF ACTION FOR UNSEAWORTHINESS

57.    Respondent/Claimant hereby asserts an action for vessel unseaworthiness against

Petitioners, BULLY 1 and NOBLE Drilling, under the General Maritime Law of the United States.

58.    Respondent/Claimant repeats, re-alleges, and adopts the paragraphs above, as if stated

herein and further alleges as follows:

59.    On or about August 29, 2021, the GLOBETROTTER II was owned, operated, controlled,

and/or manned by Petitioners, BULLY 1 and NOBLE DRILLING.

60.     On or about August 29, 2021, danger conditions existed aboard the GLOBETROTTER II, and the GLOBETROTTER II was unseaworthy.

61.     At the time of the occurrence, Respondent/Claimant, THOMAS D. HEXT, was within the course and scope of his employment as a crewmember and was performing his normal duties aboard the GLOBETROTTER II while the vessel was underway in navigable waters.

62.     Pursuant to the General Maritime Law of the United States, Petitioners, BULLY 1 and NOBLE DRILLING, as owner and owner *pro hac vice* of the GLOBETROTTER II, owed Respondent/Claimant, THOMAS D. HEXT, an absolute and non-delegable duty to provide him with a vessel that was seaworthy in all respects.

63.     Petitioners breached said duty to Respondent/Claimant, and the GLOBETROTTER II was unseaworthy in one or more of the following respects:

    a.  The vessel had an incompetent Master, pilot, and/or crew;
    b.  The vessel lacked safe policies and procedures for mitigating against the risks of a hurricane and for evacuating personnel during adverse weather and sea conditions;
    c.  There was a crack in the hull of the vessel, which allowed water into certain compartments;
    d.  There was a malfunction of some of the equipment on deck used to pull the risers;
    e.  The vessel lacked adequate safety equipment and gear to protect the crew; and,
    f.  Other unseaworthy conditions as proven at the time of trial.

64.     Prior to the occurrence in question, Petitioners failed to investigate the hazards of the vessel and/or take necessary steps to eliminate, minimize, or warn Respondent/Claimant of said hazards.

65.     The unseaworthiness of the GLOBETROTTER II occurred within the privity and knowledge of Petitioners, BULLY 1 and NOBLE DRILLING.

66.     At all relevant times, Respondent/Claimant, THOMAS D. HEXT's, injuries occurred as a result of the negligence of Petitioners and the unseaworthiness of the GLOBETROTTER II, all of which were within the knowledge of Petitioners, BULLY 1 and NOBLE DRILLING.

67.     Upon the trial of this case, Respondent/Claimant, THOMAS D. HEXT, would show that he sustained injuries as a result of Petitioners' negligence and/or the unseaworthiness of the GLOBETROTTER II.  Respondent/Claimant, THOMAS D. HEXT, has sustained the following damages for which he seeks, and is entitled to, recovery from Petitioners, BULLY 1 and NOBLE DRILLING:

    a.  Reasonable and necessary medical expenses in the past and future;
    b.  Physical pain and suffering in the past and future;
    c.  Mental anguish in the past and future;
    d.  Reasonable and necessary maintenance and cure benefits in the past and future;
    e.  Loss of earning capacity in the past and future;
    f.  Compensatory damages in excess of the amount of Five Million and no/100's ($5,000,000.00) dollars; and,
    g.  Prejudgment interest.

68.     Respondent/Claimant requests a trial by jury.

## IV. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Respondent/Claimant, THOMAS D. HEXT, prays that he has the following relief:

    a.  That Petitioners, BULLY 1 and NOBLE DRILLING's, Complaint and Petition for Exoneration from or Limitation of Liability be in all things denied;

    b.  Actual damages and costs incurred herein;

    c.  Pre-Judgment interest at the maximum rate allowed by law;

    d.  Post-judgment interest at the maximum rate allowed by law; and

    e.  Such other relief to which Respondent/Claimant may be justly entitled.

Respectfully submitted,

SCHECHTER, SHAFFER & HARRIS, LLP

_____/S/ Laura B. De La Cruz_____

LAURA B. DE LA CRUZ
Louisiana Bar No. 37966
MATTHEW D. SHAFFER*
Texas Bar No. 18085600
3200 Travis St., 3rd Floor
Houston, Texas 77006
Tel: (713) 524-3500
Facsimile: (866) 696-5610
Ldelacruz@smslegal.com
Mshaffer@smslegal.com
*Attorney will be seeking admission pro hac vice


Counsel for Respondent/Claimant,
THOMAS D. HEXT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being filed and served upon all known counsel of record through the Case Management/Electronic Case Filing system for the United States District Court for the Western District of Louisiana in accordance with the Federal Rules of Civil Procedure on this the ___8th___ of April 2022.

Robert M. Kallam
Taylor Brooke Ashworth
Kean Miller LLP
600 Jefferson Street, Suite 1101
Lafayette, Louisiana 70501
robert.kallam@keanmiller.com
taylor.ashworth@keanmiller.com

Timothy Wayne Strickland
Stacey Tyree Norstrud
Kean Miller LLP
711 Louisiana Street, Suite 1800
Houston, Texas 77002
tim.strickland@keanmiller.com
stacey.norstrud@keanmiller.com

Bradley J. Schlotterer
Sean T. McLaughlin
Kean Miller LLP
First Bank and Trust Tower
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
brad.schlotterer@keanmiller.com
sean.mclaughlin@keanmiller.com

Jeffrey Coreil
Neuner Pate
One Petroleum Center
1001 West Pinhook Road, Suite 200
Lafayette, LA 70503
jcoreil@NeunerPate.com
*Counsel for Petitioners, Bully 1 (Switzerland) GmbH and Noble Drilling (U.S.) LLC*

_____*/S/ Laura B. De La Cruz*_____
LAURA B. DE LA CRUZ