# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF BULLY 1 (SWITZERLAND) GMBH, AS OWNER, AND NOBLE DRILLING (U.S.) LLC, AS OWNER *PRO HAC VICE*, OF THE *GLOBETROTTER II*** | * * * * * | **CASE NO.: 6:22-CV-566** <br><br> **JUDGE ROBERT R. SUMMERHAYS** <br><br> **MAG. JUDGE CAROL B. WHITEHURST** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CLAIMANT JARED REGAN'S ANSWER, DEFENSES, AND CLAIM

Claimant Jared Regan (hereinafter sometimes referred to as "the Claimant" or "Regan through undersigned counsel, files his Answer, Defenses, and Claim to the Complaint for Exoneration from or Limitation of Liability of Bully 1 (Switzerland) GMBH ("Bully 1") as owner and Noble Drilling (U.S.) LLC ("Noble Drilling"), as owner *Pro Hac Vice*, of the *Globetrotter II*.

### NOTICE OF RESERVATION OF RIGHTS

Claimant Regan fully reserves his rights pursuant to the savings to suiters clause, 28 USCA 1332 to pursue his state court action, which action was removed to this Court and which actions are more fully set forth in the matter styled "Jared Regan vs. Noble Drilling (U.S.) LLC et al.," found at docket no. 6:21-cv-03993, should the stay in this matter be lifted.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Bully 1 and/or Noble Drilling are not entitled to exoneration from or limitation of liability in these proceedings because it had privity and knowledge of the unsafe, negligent, and/or unseaworthy conditions of the GLOBETROTTER II and the negligent operating procedures

employed on the GLOBETROTTER II, which were, inter alia, company policy and practice, and which caused the Claimant's injuries on or about August 29, 2021.

## THIRD DEFENSE

The Claimant asserts that Bully 1 and/or Noble Drilling management knew of and approved the unsafe practices and unseaworthy conditions aboard the Globetrotter II prior to, during and in the aftermath of Hurricane Ida during the period that included August 28-29, 2021, namely the management of Bully I (Switzerland) GMBH ("Bully 1") and/or Noble Drilling (U.S.) LLC ("Noble Drilling") knew and/or understood the following:

1. Bully 1 and/or Noble Drilling made a conscious decision in the days leading up to and during Hurricane Ida – one of the most powerful and damaging hurricanes to ever strike the United States, to leave the Globetrotter II and its crew and passengers in harm's way of that hurricane in the Gulf of Mexico.

2. Although Hurricane Ida made landfall along the Southeast Louisiana coast on Sunday, August 29, 2021, numerous around-the-clock warnings were issued days in advance about the storm's gathering strength. In the days before Saturday, August 28, 2021, the National Weather Service, the National Hurricane Center and the European Hurricane Model pin-pointed Hurricane Ida's probable landfall to be along the Louisiana coast between Morgan City, Louisiana and Grand Isle, Louisiana. As projected, Hurricane Ida made landfall in Southeast Louisiana, near Port Fourchon with sustained winds of 150 miles per hours, with wind gusts up to 165 mph.

3. At all times pertinent hereto, the GLOBETROTTER II was working in the Gulf of Mexico, off the Louisiana coast for the benefit of, and at the direction of, Nobel Drilling and/or Bully 1, solely or in concert with others. In the days leading up to Saturday,

August 28, 2021, Hurricane Ida entered the Gulf of Mexico taking direct aim at the Southeast Louisiana coast.

4. Unfortunately for the GLOBETROTTER II and her crew and all aboard, neither Noble Drilling and/or Bully 1, solely or in concert with others, cared about the catastrophic hazards posed to the GLOBETROTTER II and her crew members.

5. On August 28, 2021, Regan was aboard the GLOBETROTTER II in the Gulf of Mexico. Despite the undeniable path of Ida, Nobel Drilling and/or Bully 1, solely or in concert with others continued to operate the GLOBETROTTER II in direct defiance and willful disregard of and indifference to all weather information made available to the GLOBETROTTER II, as well as the broadcasted weather information made available to mariners by the National Weather Service and the National Hurricane Center.

6. In the hours before Hurricane Ida's arrival at the place where the GLOBETROTTER II was then located in the Gulf of Mexico, the GLOBETROTTER II unlatched from its sub-sea drilling activities and headed directly into the approaching storm. Nobel Drilling and/or Bully 1, solely or in concert with others then placed GLOBETROTTER II on a collision course with Hurricane Ida – within ten (10) miles of her eyewall.

7. The GLOBETROTTER II and her crew and all aboard were exposed to 150 miles per hour winds, gusting up to 165 miles per hours and 80–95-foot sea swells causing the GLOBETROTTER II to violently sway, yaw and pitch so severely that her crew was, at times, forced to walk on her walls, rather than the interior walkways.  The sway was so extreme that the GLOBETROTTER II almost capsized several times and that all on board thought they were going to die.

**FOURTH DEFENSE**

The Petitioner has failed to comply with the requirements of the Limitation of Liability

Act, 46 U.S.C. § 30501, et seq., including, without limitation, the failure to deposit adequate and

proper security, which bars the Petitioner's request for limitation of liability. Claimant reserves

the right to further challenge the adequacy / sufficiency of the security posted by the Petitioners

in Limitation in this and/or any other related litigation.

**FIFTH DEFENSE**

The events culmination in injury to Jared Regan were the result of the negligence, fault,

want of due care, willful, wanton, and/or reckless conduct, and/or gross negligence on the part of

Nobel Drilling and/or Bully 1 and/or those for whom Nobel Drilling and/or Bully 1, solely or in

concert with others is responsible, and/or the unseaworthiness of the vessel and/or other vessels

within the flotilla and/or under common operation, control, supervision and/or enterprise at all

pertinent times, all of which was within the privity and knowledge of Nobel Drilling and/or

Bully 1, for those reasons, the Complaint for Exoneration From or Limitation of Liability should

be denied.

**SIXTH DEFENSE**

The events culminating in the injury of Jared Regan were not the result of any

negligence, fault or want of due care on the part of Jared Regan or those for whom he may be

responsible.

**INSUFFICIENCY OF FUND AND SECURITY**

Claimant asserts that the fund and security provided by Noble Drilling and/or Bully 1 is

insufficient and moves that the security given by Noble Drilling and/or Bully 1 be increased on

the ground that they are less than the value of the Noble Drilling and/or Bully 1's interest in the vessel and pending freight and avers:

1.  There is abundant evidence that the "Vessel valuation" relied upon by Noble Drilling and Bully 1 is neither comprehensive, complete or accurate and said "Vessel valuation" grossly underestimates the value of the GLOBETROTTER II.

2.  For example, attached as "Exhibit 1" is a copy of the Certificate of Ownership and Encumbrance issued by the Liberia Maritime Authority of the Republic of Liberia, there is a "First Preferred Ship Mortgage" dated February 2021 and granted by Bully 1 (SWITZERLAND) GMBH to JPMORGAN CHASE BANK, NA, as collateral agent and surety trustee in the total amount of "One Billion Three Hundred Fifty Million and No/100 United States Dollars (USD $1,350,000,000) under the Credit Agreement, the Guaranty and Colleterial Agreement, and other Credit Documents" found at "E.S.T. in Book PM 73 at Page 191."

3.  Said Certificate of Ownership and Encumbrance also evidences that the GLOBETROTTER II is security for a "Preferred Ship Mortgage" in the total amount of $216,000,000 granted by granted by Bully 1 (SWITZERLAND) GMBH to "U.S. Bank National Association as Collateral Agent and Security Trustee."

4.  Moreover, the "Vessel valuation" does not comply with nor satisfy the requirements of proof as is contemplated by 28 U.S.C. 30501, et seq., in that said "Vessel valuation:"

    a.   does not address whether claims by Nobel Drilling and/or Bully 1 have resulted in a monetary recovery for damage to the GLOBETROTTER II;

    b.  does not address nor consider, other than in a conclusory way, the GLOBETROTTER II's "freight then pending" as contemplated by 46 U.S.C.A. §

30511(b)(1)(A), and which the United States Supreme Court has for over one
hundred and twenty-five years to mean the earnings of the voyage.  See *The Main
v. Williams*, 152 U.S. 122, 14 S. Ct. 486, 38 L. Ed. 381, 2007 A.M.C. 2966
(1894).

5.  All of these facts reveal that the amount that the "Vessel valuation" purports to establish
    as the "post-incident value" of the GLOBETROTTER II is facially deficient and
    insufficient and is insufficient to carry out the provisions of the limitation's statutes
    relating to claims in respect of loss of life or bodily injury.

6.  Pursuant to Federal Rules of Civil Procedure, Supplemental Admiralty Rule F(7) it is
    respectfully requested that this Court "cause due appraisement to be made of the value of
    the plaintiff's interest in the vessel and pending freight; and if the court finds that the
    deposit or security is either insufficient or excessive it shall order its increase or
    reduction."

7.  Claimant reserves the right to supplement these paragraphs with other evidence of the
    value and undervaluation of the GLOBETROTTER II as needed and the case may be.

**ANSWER**

AND NOW, specifically reserving all defenses asserted herein including, without
limitation, Claimant's rights pursuant to the savings to suiters clause, 28 USCA 1332 to pursue
his state court action, which action was removed to this Court and which actions are more fully
set forth in the matter styled "Jared Regan vs. Noble Drilling (U.S.) LLC et al.," found at docket
no. 6:21-cv-03993, should the stay in this matter be lifted. the Claimant responds to the
individual articles of the Complaint for Exoneration From or Limitation of Liability, identified

by paragraphs as number in Complaint for Exoneration From or Limitation of Liability the as follows:

1. Claimant admits the allegations in Paragraph 1 insofar as they relate to the status of Bully 1 as a Swiss company. Claimant denies the remaining allegations contained Paragraph 1 for lack of information sufficient to justify a belief therein.

2. Claimant admits the allegations in Paragraph 2 insofar as they relate to the status of Noble as a Delaware limited liability company. Claimant denies the remaining allegations contained Paragraph 2 for lack of information sufficient to justify a belief therein.

3. Claimant admits the allegations of Paragraph 3 to the extent they relate to Noble's and Bully 1's status as the owners of the GLOBETROTTER II. Claimant denied the remaining allegations contained in Paragraph 3 as they draw legal conclusions and for lack of information sufficient to justify a belief therein.'

4. Claimant admits the allegations of Paragraph 4 insofar as they relate to the GLOBETROTTER II's status.  The remaining allegations of Paragraph 4 are denied for lack of information sufficient to justify a belief therein.

5. Claimant denies the allegations of Paragraph 5.

6. Claimant admits the allegations of Paragraph 6 to the extent they indicate that Hurricane Ida formed in the Gulf during the week of August 23, 2021. Claimant denies the remaining allegations of Paragraph 6 insofar as they improperly characterize the formation of the storm, attempt to frame the actions of Noble Drilling and/or Bully 1 in a reasonable light and for lack of sufficient basis to justify a belief therein.

7. The allegations of Paragraph 7 in Complaint For Exoneration From or Limitation of Liability are denied as written, except to admit that it appears that "claims and lawsuits

have been made/filed by multiple individuals aboard the vessel, which include allegations

of physical injury, mental anguish, distress, discomfort, as well as other alleged issues

relating to the impact of the weather on GLOBETROTTER II."

8. The allegations of Paragraph 8 in Complaint For Exoneration From or Limitation of

Liability are denied for lack of information to justify a belief therein.

9. The allegations of Paragraph 9 in Complaint For Exoneration From or Limitation of

Liability are denied.

10. The allegations of Paragraph 10 in Complaint For Exoneration From or Limitation of

Liability are admitted, except for the allegations that "certain contracting parties and/or

third-party contractors may have also sustained physical damage to property, contractual

issues, and/or other losses," which allegations are denied for lack of sufficient

information to justify a belief therein. Claimant denies the allegations of 10 insofar as

they infer or state that Claimants in Limitation bear no fault in causing the damages as set

forth by the Claimant.

11. Paragraph 11 is admitted to the extent it sets forth the status of certain parties who have

commenced litigation arising out of the accident at issue. Subject thereto, all remaining

allegations of Paragraph 11 are denied.

12. The factual allegations of Paragraph 12 in the Complaint For Exoneration From or

Limitation of Liability are denied as written and the allegations regarding the prayer and

allegations of the Complaint For Exoneration From or Limitation of Liability require no

answer by Claimant, but insofar as an answer is required, then are denied as written.

13. The allegations of Paragraph 13 in Complaint For Exoneration From or Limitation of

Liability are admitted except the allegation that the GLOBETROTTER II "has not been

attached or arrested," which allegations is unknown to Claimant and is thus denied for lack of sufficient information to justify a belief therein.

14. The allegations of Paragraph 14 in Complaint For Exoneration From or Limitation of Liability do not require a response by the Claimant as it contains a legal conclusion; however, to the extent a response is deemed required, Claimant denies that the security posted is adequate.

15. The allegations of Paragraph 15 in Complaint For Exoneration From or Limitation of Liability do not require a response by the Claimant as it contains a legal conclusion; however, to the extent a response is deemed required, Claimant denies that the security posted is adequate.

16. The allegations of Paragraph 16 in Complaint For Exoneration From or Limitation of Liability are denied in their entirety, including the alternative defense that the Petitioners in Limitation are entitled limitation of liability as provided in 46 U.S.C. §§ 30501-30512.

17. The allegations of Paragraph 17 in Complaint For Exoneration From or Limitation of Liability are denied in their entirety, including any allegations or defenses asserting limitation of liability or other relief as provided in 46 U.S.C. §§ 30501-30512.

18. The allegations of Paragraph 18 in Complaint For Exoneration From or Limitation of Liability are denied.

## JARED REGAN'S CLAIM

And now, reserving all rights to prosecute his claims and relief sought in his state court action, which action was removed to this Court and which actions are more fully set forth in the matter styled "Jared Regan vs. Noble Drilling (U.S.) LLC et al.," found at docket no. 6:21-cv-03993, should the stay in this matter be lifted, Claimant hereby asserts his Claim against Bully 1 and/or Noble Drilling, and, in support of his claim, respectfully represents the following:

I.

Jared Regan has an action as in contemplated by 33 U.S.C. § 905(b) of LHWCA as modified by the General Maritime Law of the United States

II.

Your Claimant Jared Regan, age 39, is a person of the full age of majority and a resident of Abbeville, Vermillion Parish, Louisiana.

III.

At all times pertinent hereto, Regan was employed by Pro-T Co. Inc. of Broussard, Louisiana ("Pro-T").

IV.

At times pertinent hereto, Regan was a filtration technician employed by Pro-T and working in the Gulf of Mexico, off the Louisiana coast aboard the *GLOBETROTTER II*.

V.

Regan worked full time for Pro-T and received significant remuneration, plus found and fringe benefits.

VI.

Noble Drilling, upon information and belief, is a foreign limited liability company, organized under and existing by virtue of the laws of the State of Delaware, having its principal place of business in Sugar Land, Texas.  Noble Drilling is licensed to do and doing business in this State and has designated its principal Louisiana business establishment location as 3867 Plaza Tower Dr., Baton Rouge, Louisiana.

VII.

Bully I (Switzerland) GMBH ("Bully 1") as owner NOBLE GLOBETROTTER II (also sometime rereferred to as "Globetrotter II") is thought to be a corporation, or other business entity, organized and existing by virtue of the laws of Switzerland (officially known at the "Swiss Confederation") a landlocked country located in continental Europe.  Bully I and Noble Drilling are sometimes collectively referred to as "Noble Defendants."

VIII.

The GLOBETROTTER II is an ultra-deep-water drillship 620 feet in length, 105 feet in breadth, and 62 feet in depth, as is more fully described and shown in Exhibit "A".

IX.

At all times pertinent hereto, the Bully 1 and/or Noble Drilling owned, operated, manned, managed and controlled the ultra-deep-water drillship GLOBETROTER II.

X.

Jared Regan suffered injuries and damage on or about Saturday, August 28, 2021 as a consequence of the negligence, negligence *per se,*  carelessness, and omission of duty, as well as the recklessness, gross negligence, and willful and wanton conduct on the part of the Bully 1, Noble Drilling and/or Shell, either acting alone or in concert

including, but not limited to, the conscious decision made by the Noble Defendants and Shell in the days leading up to and during Hurricane Ida – one of the most powerful and damaging hurricanes to ever strike the United States.

XI.

Although Hurricane Ida made landfall along the Southeast Louisiana coast on Sunday, August 29, 2021, numerous around-the-clock warnings were issued days in advance about the storm's gathering strength. In the days before Saturday, August 28, 2021, the National Weather Service, the National Hurricane Center and the European Hurricane Model pin-pointed Hurricane Ida's probable landfall to be along the Louisiana coast between Morgan City, Louisiana and Grand Isle, Louisiana. As projected, Hurricane Ida made landfall in Southeast Louisiana, near Port Fourchon with sustained winds of 150 miles per hours, with wind gusts up to 165 mph.

XII.

At all times pertinent hereto, the GLOBETROTTER II was working in the Gulf of Mexico, off the Louisiana coast for the benefit of, and at the direction of, the Noble Defendants and Shell. In the days leading up to Saturday, August 28, 2021, Hurricane Ida entered the Gulf of Mexico taking direct aim at the Southeast Louisiana coast.

XIII.

Unfortunately for the GLOBETROTTER II and her crew and all aboard, neither the Noble Defendants nor Shell cared about the catastrophic hazards posed to the GLOBETROTTER II and her crew members.

XIV.

At all times relevant herein, and in the days leading up to August 28, 2021, Hurricane Ida entered the Gulf of Mexico on a path directed towards the Louisiana coastline. During this period, the National Hurricane Center and the European Hurricane Model projected Hurricane Ida's probable landfall to be along the Louisiana coast between Morgan City and Grand Isle Louisiana. As the storm grew, Hurricane Ida's sustained winds were recorded as high as 150 mph with gusts up to 165 mph. On August 28, 2021, Hurricane Ida – as predicted – entered the Gulf and continued moving towards Southeast Louisiana as projected.

XV.

At the same time, the *GLOBETROTTER II* and her crew continued operating in the Gulf of Mexico in the direct path of Hurricane Ida, despite the numerous warnings of clear and present danger posed by the quickly approaching category 5 hurricane. The Petitioners in Limitation willfully defied and disregarded all weather information available to them, including the broadcasted weather information provided to mariners by the National Weather Service and National Hurricane Center.

XVI.

On August 28, 2021, and the days leading up thereto and for a time afterwards, Regan was aboard the GLOBETROTTER II in the Gulf of Mexico.

XVII.

In the hours before arrival of the eye and/or cone of Hurricane Ida at the place where the GLOBETROTTER II was then located in the Gulf of Mexico, the GLOBETROTTER II unlatched from its sub-sea drilling activities and headed directly into the approaching storm. The Noble Defendants and the Shell Defendants then placed

GLOBETROTTER II on a collision course with Hurricane Ida – believed to be within ten (10) miles of her eyewall.

### XVIII.

The GLOBETROTTER II and her crew and all aboard were exposed to 150 miles per hour winds, gusting up to 165 miles per hours and 80–95-foot sea swells causing the GLOBETROTTER II to violently sway, yaw and pitch so severely that her crew was., at times, forced to walk on her walls, rather than the interior walkways.  The sway was so extreme that the GLOBETROTTER II almost capsized several times and that all on board thought they were going to die.

### XIX.

Reganwas violently tossed by the extreme weather that struck the Globetrotter II, causing him to be slammed by walls and the rising and pitching decks, all of which caused serve, permanent and life changing injuries to your plaintiff.

### XX.

The injuries suffered by Regan were cause by the legal fault, negligence, negligence per se, carelessness, and omission of duty, as well as by the recklessness, gross negligence and willful and wanton conduct on the part of the Noble Defendants, either acting alone or in concert with others, without any legal fault, negligence, carelessness or omission of duty on the part of Regan, causing or contributing in any way thereto.

XXI.

The legal fault, negligence, negligence *per se,* carelessness, and omission of duty, as well as the recklessness, gross negligence, and willful and wanton conduct on the part of the Noble Defendants, either acting alone or in concert, consisted of the following acts and omissions:

a.  In failing to instruct, train, and supervise the crew of the GLOBETROTTER II or, in the alternative, in failing to adequately instruct, train, and supervise the crew of the GLOBETROTTER II;

b.  In that the GLOBETROTTER II was not in the charge of competent persons and crew;

c.  In failing to timely and seasonably order the GLOBETROTTER II to move off of its drilling location and out of the path of Hurricane Ida;

d.  In failing to timely and seasonably move the GLOBETROTTER II off its drilling location and out of the path of Hurricane Ida;

e.  In failing to promulgate, adopt, and enforce safety practices, safety policies, and safety procedures concerning hazard mitigation during a hurricane or, in the alternative, in failing to promulgate, adopt, and enforce adequate safety practices, safety policies, and safety procedures concerning hazard mitigation during a hurricane;

f.  In failing to timely and seasonably evacuate the GLOBETROTTER II of all nonessential personnel well in advance of the approach of Hurricane Ida;

g.  In failing to insist that the GLOBETROTTER II be brought into the nearest

port, before she was hit by Hurricane Ida;

    h.      In violating applicable United States Coast Guard, and BSEE regulations.

XXII.

All of the above items a through h, inter alia, were the direct, proximate, contributing, and legal causes of the accident subject herein, which have been the cause of damages sustained by Mr. Regan for which Mr. Regan is allowed to recover money damages reasonable within the premises, pain, suffering, mental anguish, past and future economic losses, past and future medical and life care expenses, and to the extent any of the above acts and omissions were reckless, malicious, willful and/or wanton, punitive damages, as well as wrongful death damages arising therefrom including loss of society  and companionship, loss of performance of material services, loss of love and affection, and mental anguish and grief.  Mr. Regan sustained serious and potentially permanent injuries to his body and mind, the full extent of which has not yet been determined, due to and because of the legal fault, negligence, negligence *per se*, carelessness and omission of duty, as well as the recklessness, gross negligence and willful and wanton conduct on the part of the Noble Defendants, either acting alone or in concert with others.  More particularly, Regan has been caused, inter alia, and may be caused to suffer:

    a)  Pain, humiliation and suffering;

    b)  Inconvenience;

    c)  Loss of enjoyment of life;

    d)  Bodily injuries;

    e)  Lost past wages, including benefits;

    f)  Loss of future wage-earning capacity, including benefits;

    g)  Scarring;

    h)  Mental anguish, aggravation;

    i)  Medical expenses, both past & future.

### XXIII.

In addition to all compensatory damages to which Mr. Regan is otherwise entitled to receive, your plaintiff is also entitled to punitive damages because the Noble Defendants acted, either alone or in concert with others, with willful and wanton disregard of Regan's rights to, among other things, a safe workplace. The Noble Defendants were well aware of the grave danger to human life presented by Hurricane Ida in the area of the Gulf of Mexico where the GLOBETROTTER II and her crew and all aboard GLOBETROTTER II were working but did absolutely nothing to eliminate or mitigate those hazards. Rather, the Noble Defendants ignored the grave hazard to human life presented by Hurricane Ida and ordered the GLOBETROTTER II crew members to continue working; delayed evaluation of all non-essential personnel, including the GLOBETROTTER II crew and those aboard.  The Nobel Defendants did this in willful disregard or the danger that they were placing Mr. Regan and those similarly situated and valued money of human life.

### XXIV.

The acts and omissions of the Noble Defendants involved a callous disregard for Regan's safety due to the extreme degree of danger and considering the probability and magnitude of potential harm to human life. Moreover, the Noble Defendants had actual,

subjective knowledge of the extreme risk of harm to human life involved, and consciously disregarded the risk by ordering that the crew of the GLOBETROTTER II to continue to work and refused to allow the Globetrotter II to immediately evacuate and seek shelter from Hurricane Ida.

## THIRD PARTY COMPLAINT

AND NOW, in further response, and out of an abundance of caution, Claimant, Jared Regan respectfully submits the following Third-Party Claim:

1.

Made third-party defendants herein are the following companies/corporations:

A.      Shell Oil Company ("Shell") is a foreign corporation organized under and existing by virtue of the laws of the State of Delaware, having its principal place of business in Houston, Texas.  Shell Oil Company is licensed to do and doing business in the State of Louisiana and has designated its principal Louisiana business establishment to be located at 3867 Plaza Tower Dr., Baton Rouge, Louisiana.  Shell is not entitled to limitation in any respect.  Shell contracted with the Petitioners in Limitation to engage in the production of minerals in the Gulf of Mexico.

B.      Shell Offshore, Inc. ("Shell Offshore") is a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Houston, Texas, and a designated office in Baton Rouge, Louisiana which contracted with the Petitioners in Limitation to engage in the production of minerals in the Gulf of Mexico. Shell Offshore is not entitled to limitation in any respect.

2.

Plaintiff specifically incorporates and adopts by reference thereto Paragraphs I through VII of the Claim asserted above.

3.

At all times relevant herein, Shell Oil Company and Shell Offshore, Inc. (collectively the "Shell Defendants") were the owners of the P012 well located in Mississippi Canyon Block 809 and contracted with the Petitioners in Limitation to conduct temporary abandonment operations at the said well.

4.

Like the Petitioners in Limitation, the Shell Defendants were in possession of information showing that the area in which operations were being conducted was directly in the path of the incoming Hurricane Ida. Nonetheless, and as is detailed above with respect to the Petitioners in Limitation, the Shell Defendants failed to act on the information which was readily available to them, and which unquestionably demonstrated that the GLOBETROTTER II and its crew were in imminent danger with respect to the rapidly approaching and strengthening Hurricane Ida.

5.

Specifically, the Shell Defendants were negligent and at fault for the above-described harm to the Claimant in the in the following non-exclusive particulars:

A.      In failing to instruct, train, and supervise the crew of the GLOBETROTTER II or, in the alternative, in failing to adequately instruct, train, and supervise the crew of the GLOBETROTTER II;

B.      In failing to place competent personnel in charge of the GLOBETROTTER II and its crew;

C.      In failing to timely and seasonably order the GLOBETROTTER II to move off its drilling location and out of the path of Hurricane Ida such that the vessel and its crew could be spared from the storm;

D.      In failing to timely and seasonably move the GLOBETROTTER II off its drilling location and out of the path of Hurricane Ida such that the vessel and its crew could be spared from the storm;

E.      In failing to promulgate, adopt, and enforce safety practices, policies, and procedures concerning hazard mitigation during a hurricane or, in the alternative, in failing to promulgate, adopt, and enforce adequate safety practices, policies, and procedures concerning hazard mitigation during a hurricane;

F.      In failing to timely and seasonably evacuate the to timely and seasonably order the GLOBETROTTER II and its crew of all nonessential personnel well in advance of the known, projected approach of Hurricane Ida;

G.      In failing to properly train, instruct and guide the vessel operator as to how to safely make and promptly return to land upon being provided with the projections for the path and strength of Hurricane Ida such that this incident would have been avoided;

H.      In exercising poor judgment and unsafe vessel operation on the part of the vessel operators, land-based vessel owners/owners pro hac vice, and land-based corporate management in the days leading up to this storm;

I.      In ignoring and/or overriding its own protocols the were created to provide a

failsafe against such confirmation and cognitive biases and provide objective criteria for

moving human beings out of harm's way;

J.      In violating applicable United States Coast Guard and BSEE regulations.

6.

All of the above items, A through J, of the subject accident, were the direct,

proximate, contributing, and legal causes of the accident subject herein, which have been

the cause of damages sustained by Mr. Regan, for which Mr. Regan is allowed to recover

money damages reasonable within the premises, pain, suffering, mental anguish, past and

future economic losses, past and future medical and life care expenses, and to the extent

any of the above acts and omissions were reckless, malicious, willful and/or wanton,

punitive damages, as well as wrongful death damages arising therefrom including loss of

society  and companionship, loss of performance of material services, loss of love and

affection, and mental anguish and grief and the damages for fully set forth in paragraph

XXI above.

7.

The acts and omissions of the Shell Defendants involved a callous disregard for

Mr. Regan's safety due to the extreme degree of danger and considering the probability

and magnitude of potential harm to human life. Moreover, the Shell Defendants had

actual, subjective knowledge of the extreme risk of harm to human life involved, and

consciously disregarded the risk by to the crew of the GLOBETROTTER II and those

aboard and failed to immediately evacuate and allow those placed in harm's way to

shelter from Hurricane Ida.  The fault and/or negligence of the Shell Defendants as stated above was reckless, wanton and grossly negligent thus entitling petitioner to recover punitive damages herein.

### REQUEST THAT THE COURT PROVIDE TRIAL BY JURY

Mr. Regan reserves the right to, and requests that this Court provide him with a trial by jury.

WHEREFORE, Claimant, Jared Regan having fully answered, prays that upon further proceedings the Court should enter judgment against the Petitioners in Limitations and in favor of the Claimant, Jared Regan, finding that the Petitioners in Limitation are not entitled to limitation of or exoneration from liability, with all costs of this matter taxed to the Petitioners in Limitation.  Additionally, and out of an abundance of caution, Claimant, Jared Regan, prays for reasonable relief and/or damages against Third Party Defendants, Shell Oil Company and/or Shell Offshore, Inc., which arise out of their negligence in causing the aforesaid injuries and damages to Claimant, Jared Regan. Solely to the extent the Claimant, Jared Regan, is not allowed to proceed on his claims against the Petitioners in Limitation and/or Shell Oil Company and/or Shell Offshore, Inc., in state court upon making the proper motion and stipulation, Claimant, Jared Regan prays for a trial by jury herein as to all issues triable by a jury and prays for damages, pre-judgment interest, and all other relief to which he is entitled.

RESPECTFULLY SUBMITTED:

JONES & HILL, LLC


BY:     /s/J. Craig Jones
        Craig Jones, Esq.
        La. Bar Roll No. 17648
        Craig R. Hill, Esq.
        La. Bar Roll No. 23780
        131 Highway 165 South
        Oakdale, LA  71463
        Telephone:  (318) 335-1333
        Facsimile: (318) 335-1934