UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| IN THE MATTER OF BULLY 1 (SWITZERLAND) GMBH, AS OWNER, AND NOBLE DRILLING (U.S.) LLC, AS OWNER *PRO HAC VICE*, OF THE *GLOBETROTTER II* | * CIVIL ACTION <br> * <br> * NO. 6:22-cv-00566 <br> * <br> * JUDGE ROBERT R. SUMMERHAYS <br> * <br> * MAGISTRATE JUDGE <br> * CAROL B. WHITEHURST |

* * * * * * * * * * * * * * * * * * * * * * * * *

**ANSWER, AFFIRMATIVE DEFENSES, AND CLAIMS OF CHRISTOPHER DAVIS TO VERIFIED COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

**NOW INTO COURT**, through undersigned counsel, comes Christopher Davis, ("Claimant") who pursuant to Supplemental Rule F(5) answers the Verified Complaint for Exoneration from or Limitation of Liability (Rec. Doc. 1) filed on behalf of Bully 1 (Switzerland) GmbH and Noble Drilling (U.S.) LLC ("Petitioners"), asserts affirmative defenses, and asserts his claims as follows:

**I.   ANSWER TO VERIFIED COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Claimant answers the individual paragraphs of the Verified Complaint for Exoneration from or Limitation of Liability as follows:

1. The allegations of Paragraph 1 of the Complaint are denied for lack of sufficient information to justify a belief therein.

2. The allegations of Paragraph 2 of the Complaint are denied for lack of sufficient information to justify a belief therein.

1

3.   The allegations of Paragraph 3 of the Complaint are denied for lack of sufficient information to justify a belief therein.

4.   The allegation of Paragraph 4 of the Complaint that the *GLOBETROTTER II* was a drillship vessel is admitted. The remaining allegations of Paragraph 4 are denied for lack of sufficient information to justify a belief therein.

5.   The allegations of Paragraph 5 of the Complaint are denied.

6.   The allegations of Paragraph 6 of the Complaint are:

  a.   Admitted as to the *GLOBETROTTER II* operating in Mississippi Canyon Block 809 in the Gulf of Mexico to drill the Princess P-12 well during the week of August 23, 2021.

  b.   Denied as to Feature 22-L developing near the Yucatan and Bay of Campeche and was reported as having a low probability of organization on August 23, 2021, for lack of sufficient information to justify a belief therein.

  c.   Denied as to Feature 22-L was a tropical low that remained unorganized with forecasted tracks in various areas of the Gulf of Mexico on August 24, 2021, for lack of sufficient information to justify a belief therein.

  d.   Denied as to Feature 22-L being reclassified as Invest 99L, which remained ill-defined, and projected to move into the Gulf of Mexico in the coming days for lack of sufficient information to justify a belief therein.

  e.   Denied as to Invest 99L developing into Hurricane Ida during the time period between August 26, 2021, and August 29, 2021 for lack of sufficient information to justify a belief therein.

    f.      Denied as to the storm's intensity, speed, and change of direction were not expected or foreseen.

    g.      Denied as to unforeseen complications were also experienced by the vessel when trying to unlatch and evade the storm.

7. The allegations of Paragraph 7 of the Complaint are:

    a.      Admitted as to that the winds and waves from Hurricane Ida impacted the *GLOBETROTTER II* on or about August 29, 2021.

    b.      Admitted as to that the filing of lawsuits arising out of the Claimants in Limitation's negligence in permitting the *GLOBETROTTER II* to be affected by Hurricane Ida.

    c.      Denied as to that Noble providing maintenance and cure to its employees and disputing any allegations of injuries, whether physical or mental, for lack of sufficient information to justify a belief therein.

8. The allegations of Paragraph 8 of the Complaint are denied for lack of sufficient information to justify a belief therein.

9. The allegations of Paragraph 9 of the Complaint are denied.

10. The allegations of Paragraph 10 of the Complaint are:

    a.      Admitted as to several individuals are alleged to have sustained physical and/or emotional injuries, and/or other losses as a result of the weather impact on the *GLOBETROTTER II.*

    b.      Denied as to certain contracting parties and/or third-party contractors may have also sustained physical damage to property, contractual issues, and/or other losses for lack of sufficient information to justify a belief therein.

11. The allegations of Paragraph 11 of the Complaint are denied for lack of sufficient information to justify a belief therein.

12. The allegations of Paragraph 12 of the Complaint are denied for lack of sufficient information to justify a belief therein.

13. The allegations of Paragraph 13 of the Complaint are:

    a. Admitted as to venue being proper in this judicial district.

    b. Denied as to the remaining allegations of Paragraph 13 for lack of sufficient information to justify a belief therein.

14. The allegations of Paragraph 14 of the Complaint are denied.

15. The allegations of Paragraph 15 of the Complaint are procedural legal assertions that do not require an answer of Claimant, but in an abundance of caution are denied.

16. The allegation of Paragraph 16 of the Complaint that Petitioners "have valid defenses thereto on the facts and on the law, and further alleged that the incident occurred without the privity and knowledge of Petitioners" is denied. The remaining allegations of Paragraph 16 of the Complaint are procedural legal assertions that do not require an answer of Claimant, but in an abundance of caution are denied.

17. The allegations of Paragraph 17 of the Complaint are procedural legal assertions that do not require an answer of Claimant, but in an abundance of caution are denied.

18. The allegation of Paragraph 18 of the Complaint are denied.

19. The Petitioners' prayer for relief does not require an answer of Claimant, but in an abundance of caution it is denied.

## II. AFFIRMATIVE DEFENSES TO THE VERIFIED COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY

### FIRST AFFIRMATIVE DEFENSE:

The allegations of the Complaint fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is unconstitutional in that it deprives the Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

### THIRD AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is unconstitutional in that it does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

### FOURTH AFFIRMATIVE DEFENSE:

The limitation fund is inadequate and the Petition for Exoneration from or Limitation of Liability should be dismissed because Petitioners have failed to deposit adequate security for the vessel identified in the Petition. Pursuant to Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing. Petitioners' deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

### FIFTH AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is not applicable to the instant case because:

A.     At all times relevant, the *GLOBETROTTER II* was operated in a willful, wanton and reckless manner; or, in the alternative,

B. The conduct and actions which led to the injuries and caused Claimant's damages took place with the privity and knowledge of the Petitioners, owners, managing owners, owners *pro hac vice* and/or operators of the *GLOBETROTTER II*.

## SIXTH AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*, is not applicable in the instant case because, at all relevant times, the *GLOBETROTTER II* was known by the Petitioners, owners, managing owners, owners *pro hac vice*, and/or operators to be unseaworthy.

## SEVENTH AFFIRMATIVE DEFENSE:

To the extent Petitioners' insurers attempt to avail themselves of the exoneration/limitation defense, Claimant asserts that under the circumstances extant, the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*, is unavailable to the insurers of the *GLOBETROTTER II's* owners.

## EIGHTH AFFIRMATIVE DEFENSE:

No prima facie case has been made by Petitioners establishing they are entitled to avail themselves of the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*.

## NINTH AFFIRMATIVE DEFENSE:

The Complaint for Exoneration from or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Claimant seeks a more definitive statement of the allegations, regardless of the nature, manner and extent of his Answer, Affirmative Defenses, and General Maritime Law Claims pleaded in this document.

## TENTH AFFIRMATIVE DEFENSE:

The events culminating in Claimant's damages were the result of gross, willful and wanton negligence, fault and/or want of due care on the part of Petitioners as are those for whom

Petitioners are responsible, and/or the unseaworthiness of the *GLOBETROTTER II*, all of which was within the privity and knowledge of Petitioners, and the vessel' owners, managing owners, owners *pro hac vice*, and/or operators, for which the Petition for Exoneration from or Limitation of Liability should be denied.

## ELEVENTH AFFIRMATIVE DEFENSE:

The events culminating in Claimant's damages were not the result of any negligence, fault or want of due care on his part or those for whom he may have been responsible.

## TWELFTH AFFIRMATIVE DEFENSE:

Claimant alleges that there was insurance coverage on the *GLOBETROTTER II*, insuring Petitioners in the event of an occurrence such as that which is the subject of Claimant's claims, and the proceeds of any such insurance policy should be included in this limitation proceeding in the event the Court determines that these limitation proceedings are appropriate.

## THIRTEENTH AFFIRMATIVE DEFENSE:

The proceeds of any judgment, award or settlement which may be received by Petitioners from any third-party in recompense for any losses or damages sustained to the property or interests of Petitioners, as result of the fault or alleged fault of said third-party, must be included in the limitation fund.

## FOURTEENTH AFFIRMATIVE DEFENSE:

Claimant specifically reserves all rights to pursue, should he so choose all available claims in state court or any other federal court for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Saving to Suitors" clause, 28 U.S.C. § 1333, and all state law remedies, or other remedies available to Claimant.

**FIFTEENTH AFFIRMATIVE DEFENSE:**

Claimant reserves all rights to pursue, should he so choose all available claims and rights in the forum of his choice for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Savings to Suitors" clause, 28 U.S.C. § 1333, or any other available remedy, and no part of this Claim and Answer is a waiver of this defense for these rights.

**SIXTEENTH AFFIRMATIVE DEFENSE:**

Claimant reserves the right to pursue, should he so choose a motion to lift the injunction and stay of these proceedings in other forums upon Petitioners' failure to obtain relief in this limitation action, should resolution of this action precede judgment in other actions.

**SEVENTEENTH AFFIRMATIVE DEFENSE:**

The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the minerals and other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel and/or owned by the Petitioners.

**EIGHTEENTH AFFIRMATIVE DEFENSE:**

The incident made the subject of this Claim was caused at least in part, or contributed to, by the fault, neglect, and want of care of the Petitioners and their managerial employees.

**NINETEENTH AFFIRMATIVE DEFENSE:**

Claimant reserves all defenses presented in the instant Answer, Affirmative Defenses, and Claim, with full reservation of all other defenses which may be hereafter asserted due to discovery.

### III.   CLAIM AND THIRD-PARTY DEMAND OF CLAIMANT CHRISTOPHER DAVIS

Now, appearing as Claimant in Limitation, Christopher Davis asserts the following claims against of Bully 1 (Switzerland) GmbH and Noble Drilling (U.S.) LLC ("Petitioners"), and asserts a third-party demand against Shell Oil Company and Shell Offshore, Inc. ("Shell") as follows:

### A.   PARTIES

1. Christopher Davis ("Claimant") is a person of the full age of majority and a resident citizen of the State of Alabama.

2. Defendant Bully 1 (Switzerland) GmbH ("Bully 1"), on information and belief, is a company organized and existing under and by virtue of the laws of Switzerland, with its principal place of business in Baar, Switzerland. Bully 1 claims to be the Owner and/or Owner *Pro Hac Vice* of the *GLOBETROTTER II* for purposes of the Limitation of Liability Act.

3. Defendant Noble Drilling (U.S.), LLC ("Noble") is a foreign limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Sugar Land, Texas, authorized to do and doing business within the jurisdiction of this Honorable Court. Noble claims to be the Owner and/or Owner *Pro Hac Vice* of the *GLOBETROTTER II* for purposes of the Limitation of Liability Act.

4. Defendant Shell Oil Company ("Shell Oil") is a foreign limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas, authorized to do and doing business within the jurisdiction of this Honorable Court.

5. Defendant Shell Offshore, Inc. ("Shell Offshore") is a foreign limited liability company organized and existing under the laws of the State of Delaware, with its principal place of

business in Houston, Texas, authorized to do and doing business within the jurisdiction of this Honorable Court.

### B. FEDERAL SUBJECT MATTER JURISDICTION

6. Federal subject matter jurisdiction is vested in this Honorable Court pursuant to:

   a. 28 U.S.C. § 1331 federal question jurisdiction because Claimant's claims are based, in part, upon the Jones Act, 46 U.S.C. § 30104, *et seq.*; and

   b. 28 U.S.C. § 1333 admiralty and maritime jurisdiction because Claimant's claims are based, in part, upon General Maritime Law.

### C. PERSONAL JURISDICTION

7. Defendants named above, on a continuous basis, engaged in business and commerce within the Western District of Louisiana. Accordingly, all are subject to the general personal jurisdiction of this Honorable Court.

### D. VENUE

8. Venue is proper in the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### E. FACTUAL ALLEGATIONS

9. On or about August 29, 2021, Claimant Christopher Davis was an employee of Defendant Noble Drilling (U.S.), LLC and working aboard the *GLOBETROTTER II* when he suffered injuries to his neck and back, and severe emotional distress as a result of being aboard the *GLOBETROTTER II* as it received damage and nearly capsized multiples times due to Hurricane Ida in the Gulf of Mexico.

10. At all relevant times, the *GLOBETROTTER II* was a vessel in navigation and commerce upon the waters of the Gulf of Mexico and was owned, operated, manned, managed, and controlled by Petitioners in Limitation.

11. At all relevant times, Shell Oil Company and/or Shell Offshore Inc. ("Shell") were the owners and operators of the P012 well located in Mississippi Canyon Block 809, who contracted with the Petitioners in Limitation to conduct well operations at said well. Shell exercised control and oversight of the operation and possessed information showing that the area in which operations were being conducted was directly in the past of the incoming Hurricane Ida.

12. On August 27, 2021, Claimant Davis began his hitch aboard the *GLOBETROTTER II*.

13. Prior to Claimant Davis beginning his hitch, it was known that a hurricane was entering the Gulf of Mexico and that the weather would be severe.

14. Although the impending severe weather was known, operations to secure the vessel and crew had not begun. Defendants chose not to leave in advance of the storm and instead chose to stay and continue well operations.

15. On August 27, 2021, Claimant Davis and other members of the crew learned that the prior crew did not begin operations to pull the risers.

16. Claimant Davis and other members of the crew began the riser pull operations that afternoon, but ultimately realized they would not have time to pull the risers and move before the hurricane arrived.

17. Claimant Davis and the other crew members continued to pull risers until late Saturday before the storm arrived when the decision was made to stop pulling the risers and start

moving the rig at higher speeds at approximately 4 knots. At this time, the storm was already over hurricane force winds.

18. Additionally, on information and belief, the crew encountered a malfunction in some of the equipment used on deck to pull the risers, which caused additional detrimental delays.

19. The vessel was just miles from the east side of the eye wall as the worst of Hurricane Ida impacted the vessel.

20. Claimant Davis sat in his chair in his room trying to maintain his composure. Claimant Davis could not sleep and needed to be awake in the event he needed to move.

21. As Claimant Davis sat in his chair, the port side of the vessel took a large list causing the vessel to substantially tilt and causing Claimant Davis to be thrown out of his chair. The chair then pinned Claimant Davis to a door, injuring his neck and back.

22. Claimant Davis could not remove the chair off him until the vessel was upright again. Claimant Davis moved into the hallway for the remainder of the storm, holding on the handrail.

23. Throughout the duration of the storm, Claimant Davis and the other crew members feared for their lives. The impact from the storm was so extreme that the *GLOBETROTTER II* almost capsized several times, and the crew was forced to walk on walls. Claimant Davis spent the entire time thinking that he would never see his family again. Claimant Davis and the crew were crying and praying together the entire time.

24. As a result of experiencing a harrowing near death experience, Claimant now suffers from post-traumatic stress disorder, and fears he will never be able to work offshore again.

25. Claimants injuries were caused, in part, from Defendants (1) failure to follow operational T-times already calculated relative to well operations and the extreme weather event; (2)

inadequate planning prevented the drill crew from pulling equipment in time for the *GLOBETROTTER II* and its crew to evade and evacuate Hurricane Ida; (3) decision to crew change during operations with severe weather approaching delayed an operation already hours behind schedule and resulted in a failed evacuation and evade attempt; and (4) equipment breakdowns and stuck riser bolts causing further delays.

### F. JONES ACT CLAIM

26. Claimant reincorporates all of the allegations contained through paragraphs 1 through 25.

27. Claimant was injured as aforesaid, through the carelessness, recklessness and negligence of Noble, its agents, servants, and employees and without fault on his part, in the following manner:

   a. Failure to provide a safe work environment;

   b. Failure to mitigate against the dangers posed by Hurricane Ida;

   c. Failure to provide adequate safety equipment and gear;

   d. Failure to provide Claimant adequate safety from Hurricane Ida;

   e. Failure to timely and effectively secure and evacuate the *GLOBETROTTER II*;

   f. Failure to properly inspect and maintain the vessel, its equipment and gear in safe working condition;

   g. Operating the vessel in an unsafe and improper manner;

   h. Failure to leave in advance of the storm;

   i. Failure to follow applicable U.S. Coast Guard and OSHA rules and regulations;

   j. Failure to provide prompt and adequate medical attention to Claimant;

   k. Failure to use reasonable care;

   l. Failure to adequately address the deteriorating and dangerous weather conditions;

    m.    Failure to follow the weather advisories and marine bulletins issued by the National Weather Service;

    n.    Failure to provide proper and adequate equipment to the captain and his fellow crew members to properly perform their duties and/or properly navigate the vessel during the severe weather conditions;

    o.    Failure to maintain the vessel and its appurtenances and/or equipment is a safe and reasonable state of repair;

    p.    Failure to take reasonable precautions for the safety of the persons aboard the vessel;

    q.    Failure to inspect and/or plan for potential hazards aboard the vessel;

    r.    Failure to assess the wind and sea state conditions; and

    s.    All other acts of negligence to proven at trial;

### G.    MAINTENANCE AND CURE CLAIM

28.    Claimant reincorporates all of the allegations contained in paragraphs 1 through 27.

29.    Claimant, Christopher Davis, seeks all maintenance and cure, to which he may be entitled from Defendant, Noble, and further seeks compensatory damages, attorney fees, or any other appropriate damages, including punitive damages for any failure to pay maintenance or to pay cure as required by law.

### H.    GENERAL MARITIME LAW CLAIM

30.    Claimant reincorporates all of the allegations contained in paragraphs 1 through 29.

31.    At all relevant times, the *GLOBETROTTER II* was under the control, oversight and operation of Defendants Shell Oil Company and/or Shell Offshore Inc.

32. At all relevant times, Shell Oil Company and/or Shell Offshore Inc. owed Claimant a duty to exercise reasonable care under the circumstances.

33. Claimant was injured as aforesaid, through the carelessness, recklessness and negligence of Shell Oil Company and/or Shell Offshore Inc., its agents, servants, and employees and without fault on his part, in the following manner:

    a. Failure to provide a safe work environment;

    b. Failure to mitigate against the dangers posed by Hurricane Ida;

    c. Failure to provide adequate safety equipment and gear;

    d. Failure to provide Claimant adequate safety from Hurricane Ida;

    e. Failure to timely and effectively secure and evacuate the *GLOBETROTTER II*;

    f. Failure to properly inspect and maintain the vessel, its equipment and gear in safe working condition;

    g. Operating the vessel in an unsafe and improper manner;

    h. Failure to leave in advance of the storm;

    i. Failure to follow applicable U.S. Coast Guard and OSHA rules and regulations;

    j. Failure to provide prompt and adequate medical attention to Claimant;

    k. Failure to use reasonable care;

    l. Failure to adequately address the deteriorating and dangerous weather conditions;

    m. Failure to follow the weather advisories and marine bulletins issued by the National Weather Service;

    n. Failure to provide proper and adequate equipment to the captain and his fellow crew members to properly perform their duties and/or properly navigate the vessel during the severe weather conditions;

    o.    Failure to maintain the vessel and its appurtenances and/or equipment is a safe and reasonable state of repair;

    p.    Failure to take reasonable precautions for the safety of the persons aboard the vessel;

    q.    Failure to inspect and/or plan for potential hazards aboard the vessel;

    r.    Failure to assess the wind and sea state conditions; and

    s.    All other acts of negligence to proven at trial;

### I.    UNSEAWORTHINESS CLAIM

34.    Claimant reincorporates all of the allegations contained in paragraphs 1 through 33.

35.    Pursuant to the general maritime laws of the United States, Defendants had the nondelegable duty to provide the Claimant with a safe place to work, a seaworthy vessel, crew and equipment; and, as a direct and proximate result of the unseaworthiness of *GLOBETROTTER II*, its master, crew, equipment, appurtenances and gear, Claimant was injured.

36.    Claimant further avers that the failure of Defendants to provide him with a safe place to work, adequate equipment and adequate crew rendered the vessel unseaworthy, and that unseaworthiness was a proximate cause of Claimant's injury.

### J.    DAMAGES

37.    As a direct result of Defendant's negligent acts and/or omissions, and/or the negligence of Defendants' agents, and/or unseaworthiness of the *GLOBETROTTER II*, Claimant has suffered damages as follows:

    a.    Past and future physical pain and suffering;

    b.    Past and future severe mental anguish, fear, suffering, and fright;

    c.      Past and future economic losses;

    d.      Loss of earning capacity and/or income;

    e.      Loss of enjoyment of life; and, if and to the extent not paid as cure; and

    f.      Costs of medical care and treatment.

### K.    PUNITIVE DAMAGES

38.    Claimant additionally asserts a claim for punitive or exemplary damages against Defendants under the General Maritime Law because:

    a.      They acted with flagrant, reckless disregard for his life and safety;

    b.      Defendants subordinated the safety and lives of the persons aboard the *GLOBETROTTER II* to their own pursuit of money profits; and

    c.      They breached their duty to use reasonable care and prudence when ordering the *GLOBETROTTER II* to continue operations when they knew of the severe weather was approaching.

### L.    REQUEST FOR TRIAL BY JURY

39.    Pursuant to Fed. R. Civ. P. 38, and the provisions of 46 U.S.C. § 30104, *et seq.*, Claimant requests trial by jury.

### M.    PRAYER FOR RELIEF

40.    **WHEREFORE**, Claimant, Christopher Davis, prays that Defendant Bully 1 (Switzerland) GmbH ("Bully 1") and Defendant Noble Drilling (U.S.), LLC, and third-party Defendants Shell Oil Company and Shell Offshore Inc. be served with Summons and a copy of this Complaint for Damages, that they serve theirs answers thereto, that after due proceedings had and the expiration of all legal delays there be a final judgment entered holding them liable unto Claimant in money damages reasonable under these premises, that there also be

an award of legal interest from date of judicial demand until all money awarded in judgment is fully paid, that there also be an award of all costs allowed by law, that there be trial by jury, and that the Court grant such other and further relief as the interests of justice may require.

Respectfully submitted,

*/s/ Julien G. Lamothe*
FRANK E. LAMOTHE, III, T.A. (#07945)
RICHARD M. MARTIN, JR (#08998)
JULIEN G. LAMOTHE (#38313)
**LAMOTHE LAW FIRM, LLC**
400 Poydras Street, Suite 1760
New Orleans, LA 70130
Telephone: (504) 704-1414
E-Mail: felamothe@lamothefirm.com
rmartin@lamothefirm.com
jlamothe@lamothefirm.com

## CERTIFICATE OF SERVICE

I, the undersigned, counsel for Plaintiff, do hereby certify that I have this day filed the above and foregoing document using the Court's ECF electronic filing system.

Lafayette, Louisiana, this 12th day of April, 2022.

*/s/ Julien G. Lamothe*
JULIEN G. LAMOTHE