# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

IN RE:  BULLY 1 (SWITZERLAND) GMBH, AS OWNER, AND NOBLE DRILLING (U.S.) LLC, AS OWNER *PRO HAC VICE*, OF THE *GLOBETROTTER II*

CASE NO.  6:22-CV-00566

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE CAROL B. WHITEHURST

## MEMORANDUM RULING

The present matter before the Court is a Motion to Clarify Scope of Restraining Order [ECF No. 75] filed by claimants Brandon Freeman, John Taranto, Ryan Ramsay, Tanner Littlefield, Jeffrey Edwards, and Ernest A. Kellar (collectively, the "Claimants"). The Claimants seek an order limiting the scope of the stay entered in this limitation of liability proceeding with respect to a parallel federal court action pending in the Southern District of Texas.[1] The Motion is opposed by petitioners in limitation Bully 1 (Switzerland) GmbH ("Bully 1") and Noble Drilling (U.S.) LLC ("Noble Drilling"), and claimants Shell Offshore Inc. and Shell Oil Company (collectively, "Shell"). As explained below, the Court DENIES the Motion at this stage of the proceeding.

## I.
### BACKGROUND

Bully 1 and Noble Drilling are the owner and owner *pro hac vice* of the drill ship vessel *GLOBTROTTER II*. The *GLOBETROTTER II* was performing drilling operations in the Gulf of Mexico during the week of August 23, 2021.[2] During the week of August 23, 2021, a tropical low

---

[1] *Brandon Freeman, et al. v. Noble Drilling (U.S.), LLC, et al*, 4:21-cv-03305 (S.D. Tex. 2021).
[2] Verified Complaint for Exoneration From or Limitation of Liability, ECF No. 1 at ¶ 6.

formed and, between August 26th and August 29th, developed into Hurricane Ida.[3] According to

the petitioners, Hurricane Ida's "intensity, speed, and direction changed in ways that were not

expected or foreseen."[4] Petitioners further allege that "unforeseen complications were also

experienced by the vessel when trying to unlatch and evade the storm."[5] Petitioners also allege that

on or about August 29, 2021, "the winds and waves from Hurricane Ida impacted the

*GLOBETROTTER II* while it was attempting to evade the storm," and that as "a result of this

occurrence, claims and lawsuits have been made/filed by multiple individuals aboard the vessel,

which include allegations of physical injury, mental anguish, distress, discomfort, as well as other

alleged issues relating to the impact of the weather on *GLOBETROTTER II*."[6] Noble alleges that,

while it has provided maintenance and cure to its employees, the limitation petitioners dispute

liability for physical or mental injuries.[7]

On February 25, 2022, Bully 1 and Noble Drilling commenced the instant limitation action

under the Limitation of Liability Act, 46 U.S.C. 30501, *et seq*., and seek to limit their liability

pursuant to the Act.[8] On March 4, 2022, the Court entered the Order Approving Limitation

Petitioners' Security, Directing Issuance of Notice to Claimants and Restraining Prosecution of

Claims (the "Restraining Order").[9] With respect to the further prosecution of other actions, the

Restraining Order provided:

> IT IS FURTHER ORDERED that the further prosecution of any pending
> actions, suits or legal proceedings in any court whatsoever, and the institution and
> prosecution of any suits, actions or legal proceedings of any nature and description
> whatsoever in any court, wheresoever, except in this proceeding for limitation of
> liability, against Petitioners, its controllers, underwriters, the *GLOBETROTTER II*,
> in respect to any claim arising out of or in connection with the voyage of the

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at ¶ 7.
[7] *Id.*
[8] ECF No. 1.
[9] ECF No. 3.

*GLOBETROTTER II* on or about August 29, 2021, be and the same are hereby stayed and restrained until the hearing and determination of this action, and all warrants of arrests issued in such other suits, actions or legal proceedings be and the same are hereby dissolved....

On September 8, 2021, the Claimants filed suit in Texas state court—the 234th Judicial District Court, Harris County, TX—naming Noble Drilling (a limitation petitioner), Noble Drilling Services, Inc., Noble Corporation, Noble Drilling Holding, LLC, Shell Oil Company, and Shell Offshore Inc. as defendants. In that action, the Claimants allege that, as a result of the negligent actions of the defendants, they suffered physical and mental injuries from the *GLOBETROTTER II's* interaction with Hurricane Ida.[10] This state court action was subsequently removed to the United States District Court for the Southern District of Texas on October 8, 2021. Following the entry of the Restraining Order, the Noble and Shell entities named in the Southern District of Texas action filed a Notice of Stay of Proceedings in the Southern District of Texas action.[11] The presiding judge in that case then issued an order staying that action in light of the Restraining Order.[12]

On April 27, 2022, the Claimants filed the instant Motion to Clarify Scope of Restraining Order.[13] The Claimants seek clarification of the Restraining Order in two respects. First, they seek a ruling that the Restraining Order "does *not* extend to stay litigation against co-tortfeasors of the limitation petitioners"—in other words, Noble Corporation, Noble Drilling Holding, LLC, Shell Oil Company, and Shell Offshore, Inc., the defendants in the Southern District of Texas action.[14]

---

[10] Plaintiffs' Amended Original Petition, ECF No. 75-3.
[11] ECF No. 90 at 5.
[12] *Id.*
[13] ECF No. 75.
[14] ECF No. 75-1 at 5.

Second, the Claimants seek to limit the Restraining Order so that it "does *not* extend to shield the captain(s) or crew of the *GLOBETROTTER II* from litigation."[15]

# II.
## DISCUSSION

### A.  Stays Entered Under the Limitation of Liability Act.

"Article III, § 2, of the United States Constitution vests federal courts with jurisdiction over all cases of admiralty and maritime jurisdiction."[16] Congress codified this constitutional grant of admiralty and maritime jurisdiction in 28 U.S.C. § 1333(1), which provides in relevant part: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The Limitation of Liability Act provides that "the liability of the owner of a vessel ... shall not exceed the value of the vessel and pending freight" for "any act ... done ... without the privity or knowledge of the owner."[17] "Federal courts have exclusive jurisdiction over suits invoking the Act...." [18] "When a shipowner files a federal limitation action, the limitation court stays all related claims against the shipowner pending in any forum, and requires all claimants to timely assert their claims in the limitation court."[19] "The court takes jurisdiction to entertain those claims without a jury, and ensures that the shipowner who is entitled to limitation is not held to liability in excess of the amount ultimately fixed in the limitation suit

---

[15] *Id.*

[16] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 443 (2001).

[17] 46 U.S.C. § 30505; *see also* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15:6 (6th ed. Nov. 2019 update).

[18] *Texaco, Inc. v. Williams*, 47 F.3d 765, 767 (5th Cir. 1995); *see* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.").

[19] *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir.1992).

(the limitation fund)."[20] "The court's primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum."[21]

But, as the limitation statute allows only the "owner of a vessel" to limit liability,[22] only "claims and proceedings against the owner related to the matter in question shall cease."[23] In *Zapata Haynie Corp. v. Arthur*, for example, the Fifth Circuit considered whether a "district court [had] the power to stay a state court proceeding against a ship's master."[24] The court held that it did not: "[T]he plain language of [the Act] requires us to hold that a state court suit against a master need not be stayed pending a decision in a shipowner's limitation proceeding in federal court."[25] Rather, the "benefits of the Act ... are, by their plain terms, conferred on ship *owners* only."[26]

## B. Clarification of Stay as to Shell and the Non-Owner Noble Entities

Citing *Zapata Haynie and Ingram Barge*, the Claimants first contend that Shell and the non-petitioning Noble entities are not entitled to a stay under the Limitation of Liability Act.[27] Shell and the limitation petitioners counter that the Claimants have not established grounds to modify or otherwise limit the Restraining Order. Shell, Noble, and Bully 1 argue that allowing the non-limitation action to proceed in the Southern District of Texas with a limitation petitioner—Noble Drilling—named as a defendant would frustrate the limitation petitioners' right to have limitation-related issues, such as knowledge, privity, and fault, decided in the limitation

---

[20] *Id.* (citations omitted).
[21] *Id.*
[22] *See* 46 U.S.C. § 30505(a).
[23] *See* 46 U.S.C. § 30511(c); *see also* 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 15:2 (6th ed. Nov. 2019 update) (stating that the Limitation Act "provides for limitation by the owner of any vessel").
[24] 926 F.2d 484 (5th Cir. 1991)
[25] *Id.* at 487.
[26] *Id.* at 485 (emphasis in original); *see also In re Ingram Barge Co.*, 167 F.3d 538 (5th Cir. 1998) (per curiam) (holding, based on *Zapata*, that a stay could not extend to seamen, like a pilot and crew).
[27] ECF No. 75 at 1.

proceeding. In that regard, they argue that rulings in the Southern District of Texas action could result in inconsistent findings that might have a preclusive effect on the determination of these limitation-related issues in the limitation proceeding. They also argue that a judgment in favor of the Claimants in the Southern District of Texas case could impact the limitation fund. Specifically, they point to indemnification obligations and the impact of a judgment against Shell and the non-petitioning Noble entities on insurance coverage. Finally, they contend that allowing the parallel Southern District of Texas case to proceed with Noble Drilling as a defendant would undermine judicial economy.

The Claimants are correct that the scope of a stay under the Limitation of Liability Act is generally limited to proceedings against the owner of a vessel: "claims and proceedings *against the owner* related to the matter in question shall cease."[28] The Fifth Circuit and other courts, however, have permitted stays of parallel proceedings against non-owners where these proceedings undermine a limitation petitioner's right to have limitation-related issues tried in the limitation proceeding. For example, in *Guillot v. Cenac Towing Co.*,[29] the Fifth Circuit affirmed an order staying a state court proceeding against two executive officers of the owner of the vessel and the liability insurer that issued policies covering those officers. The court concluded that, even though the owner of the vessel was not a party in the state court action, allowing that proceeding to go forward could risk the vessel owner's right to have limitation-related issues—such as privity, knowledge, and fault—decided in the limitation proceeding "considering the pervasive nature of res judicata and collateral estoppel."[30] The court reasoned that the non-limitation proceeding could therefore adjudicate more than "the claims as between the injured party plaintiff and the individual

---

[28] 46 U.S.C. § 30511(c).
[29] 366 F.2d 898 (1966).
[30] *Id.* at 906.

6

corporate officer" and thus "inescapably trespass upon the exclusive domain of the admiralty in adjudicating whether the quality of the actions of the corporate officers is such as to charge the corporate ship owner with privity and knowledge of them."[31] The Fifth Circuit, however, conditioned a stay of the state court proceeding on the parties entering into a stipulation that the Claimants could pursue the corporate officers in a separate proceeding once the limitation proceeding was resolved.[32] Courts have similarly allowed a stay of related proceedings that could impact a limitation petitioner's insurance coverage.[33] Courts have also cited judicial economy, efficiency, and fairness as supporting a stay of related proceedings against non-owners.[34]

Here, the only pending non-limitation proceeding is the Southern District of Texas proceeding and Noble Drilling, a *limitation petitioner*, is a named defendant in that case. Accordingly, the Restraining Order explicitly applies to that proceeding. The Claimants' motion does not explain how, if the Southern District of Texas case proceeds, the limitation petitioners' right to have limitation-related issues—such as knowledge, privity, and fault—decided in the limitation proceeding will be preserved.[35] This omission is significant because the Claimants' live

---

[31] *Id.*

[32] *Id.* at 908.

[33] *Olympic Towing Corp. v. Nebel Towing Co.*, 419 F.2d. 230, 235 (5th Cir. 1969); In re *Waterman S.S. Corp.*, No. 91-1491, 1992 WL 116052, at *2 (E.D. La. May 6, 1992) (indicating that a stay under the Limitation of Liability Act maybe appropriate against proceedings involving "parties whose potential liability threatened the availability of the ship's insurance proceeds."); *Archer Daniels Midland Co. v. M/T American Liberty*, No. 19-10925, 2020 WL 10486336 at *4 (citing cases authorizing stay to protect insurance coverage available to a vessel owner.)

[34] *See, e.g., In re Complaint for Exoneration From or Limitation of Liability of Shell Oil Company and Shell Offshore Inc. as Owners and/or Owners pro hac vice of M/V EB II*, 780 F. Supp. 1086, 1090-91 (E.D. La.  ). In *In re Exoneration of Shell* the court noted the purpose of a limitation proceeding "is not merely to limit liability but to bring all claims into concourse and settle *every* dispute in *one* action." *Id.* at 1091 (emphasis in original). Quoting *Maryland Cas. Co. v. Cushing*, 347 U.S. 409 (1954), the court noted that such a "concursus of all claims" ensures the "prompt economical disposition of controversies of which there is often a multiple of claimants." *Id.* The Court further noted that "judicial economy" is the "bedrock of the Limitation Act and procedures." *Id.*

[35] Ordinarily, a court *may* permit claims to proceed against limitation petitioners outside of the limitation action where "*all claimants* stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court." *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir.1996). No such stipulation has been made in the present case.

complaint in the Southern District of Texas action directly implicates issues that likely will be litigated in the limitation proceeding. For example, the complaint alleges that:

- This suit arises out of grossly reckless decisions made by Defendants [including limitation petitioner Noble Drilling] leading up to and during Hurricane Ida—one of the most powerful and damaging hurricanes to ever strike the United States. Although Hurricane Ida made landfall on August 29, 2021, warnings about the storm's gathering strength were issued days in advance.

- At all material times, the *GLOBETROTTER II* was working in the Gulf of Mexico for the benefit, and at the direction of Defendants [including limitation petitioner Noble Drilling].

- Unfortunately for Plaintiffs, neither Shell or the Noble Defendants [including limitation petitioner Noble Drilling] cared about the risks posed to Plaintiffs.

- Despite the undeniable path of the oncoming storm, Defendants [including limitation petitioner Noble Drilling] continued to operate the vessel in direct defiance of the National Hurricane Center's forecast.

- As a direct result of Defendants' [including limitation petitioner Noble Drilling] gross negligence and recklessness, Plaintiffs sustained severe bodily injuries.[36]

In the present limitation action, the Claimants filed answers that allege, *inter alia*:

> The events culminating in the Claimants' injuries were the result (in whole or in part) of the negligence, fault, or want of due care on the part of the Complainants and/or those for whom the Complainants are responsible, and/or the unseaworthiness of the GLOBETROTTER II and/or other vessels within the flotilla under common operational control, supervision, and enterprise, all of which was within the privity and knowledge of the Complainants, for which the Complaint should be denied.[37]

As the Fifth Circuit recognized in *Guillot*, litigation of issues in a non-limitation proceeding that overlap the issues raised in a limitation proceeding impinges on this Court's exclusive admiralty jurisdiction.[38] It also undermines a limitation petitioner's right to have limitation-related issues tried in the limitation proceeding given the risk of inconsistent rulings and preclusion.[39] Indeed, the presence of Noble Drilling as a defendant in the non-limitations action makes this even a

---

[36] ECF No. 75-3 at ¶¶ 11-14.
[37] ECF No. 42 at 3.
[38] 366 F.2d at 906.
[39] *Id.*

stronger case for a stay than *Guillot* because *Guillot* did not involve a limitations petitioner that was sued in a non-limitation proceeding.[40]

The limitation petitioners also argue that a judgment in the Southern District of Texas case could impact their indemnification obligations and insurance coverage. Specifically, Shell has asserted indemnity and contribution claims against the limitation petitioners. The Shell entities are also "additional assureds" under policies that could also provide coverage to a limitation petitioner. Accordingly, a judgment against them could reduce the amount of coverage available to a vessel owner. The Court also agrees with the limitation petitioners that two parallel federal court proceedings adjudicating similar limitation-related questions and relying on overlapping witnesses and evidence would frustrate judicial economy.

Moreover, the cases cited by the Claimants do not support the relief they request with respect to Shell and the other defendants in the Southern District of Texas action. The primary case cited by the Claimants, *Zapata Haynie*, is distinguishable. In that case, the Fifth Circuit held that a stay under the Limitation of Liability Act could not extend to proceedings against the "master" of the vessel involved in the limitation proceeding.[41] The court based this conclusion on the text of the Limitation of Liability Act, which the court concluded expressly denies the protection of the Act to "the master, officers, or seaman...."[42] The court distinguished *Guillot* on the grounds that the executive officers at issue in *Guillot*—unlike the "master" in *Zapata Haynie*—were not expressly referenced in the Limitation of Liability Act.[43] Here, the live complaint in the Southern

---

[40] While the *Guillot* court did require a stipulation for the stay to extend to the state court proceeding, the only defendants in that state court proceeding were not vessel owners. Because a limitation petitioner is a defendant in the non-limitation action, *Guillot*'s requirement for a stipulation as a prerequisite to a stay is inapplicable. Indeed, as explained in footnote 35 *supra*, the stay would apply to the Southern District of Texas action under these circumstances unless the parties agreed to a stipulation protecting the *petitioner's* rights in the limitation proceeding. There is no such stipulation in the record.

[41] *Zapata Haynie Corp.*, 926 F.2d 484 at 485.

[42] *Id.*

[43] *Id.*

District of Texas does not name the "master" or any other crew member of the *GLOBETROTTER II* as a defendant.[44] *Zapata Haynie*, therefore, does not support the relief requested by the Claimants with respect the defendants in the Southern District of Texas action.

The Claimants also ignore the fact that the non-limitation proceeding in the present case is pending in *federal* court, not *state* court. The vast majority of cases cited by the Claimants address whether a stay of a *state court* proceeding in favor of the federal limitation proceeding is appropriate. The stay of a state court proceeding under these circumstances squarely implicates the Anti-Injunction Act, 28 U.S.C. § 2283.[45] The Anti-Injunction Act precludes a federal court from enjoining a state court proceeding unless "expressly authorized to do so by Congress, or where necessary in aide of its jurisdiction or to protect and effectuate its judgments.[46] The Limitation of Liability Act is an exception to the Anti-Injunction Act.[47] Accordingly, the cases cited by the Claimants address this hurdle in the context of the express language of the Limitation of Liability Act. Here, the hurdle posed by the Anti-Injunction Act does not apply because the limitation and non-limitation proceedings are both pending in federal court.

In sum, the Claimants have not established grounds to clarify or modify the Restraining Order given that (1) the only non-limitation action pending names one of the limitation petitioners as a defendant, (2) the Claimants have not explained how the limitation petitioners' right to adjudicate limitation-related issues solely in the limitation proceeding can be preserved if the Southern District of Texas action were to go forward, (3) the Shell entities that are defendants in the Southern District of Texas action are additional assureds under certain insurance policies and

---

[44] ECF No. 75-3.
[45] *See, e.g., Homestead Ins. Co. v. Gulf Tran, Inc.*, No. 93-0607, 1993 WL 390544 (E.D. La. Sept. 28, 1993).
[46] 28 U.S.C. § 2283.
[47] *See e.g., Homestead Ins. Co.*, 1993 WL 390544 at *2 (citing *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 133 (1941)).

a judgment in that action could potentially diminish insurance coverage available to the limitation petitioners, (4) both the limitation and non-limitation proceedings are pending solely in federal court and, thus, a stay does not implicate the Anti-Injunction Act, and (5) judicial economy supports the resolution of limitation-related issues in the present limitation proceeding to avoid the duplication and inconsistent rulings that could result if the two federal actions were to proceed on parallel tracks. Accordingly, the Court DENIES the relief requested by the Claimants as to Shell and the non-petitioner Noble entities at this time. This denial is without prejudice to the Claimants renewing their request at a later stage of the proceeding once the concerns cited by the limitation petitioners can be adequately addressed.

**C.   Clarification of the Stay as to the Vessel's Master and Seaman.**

The Claimants next argue that the Restraining Order should not apply to any claims against the "master" or crew members of the *GLOBETROTTER II.* Shell and the limitation petitioners respond that this request is premature because the Claimants have not named the master or any other crew member of the *GLOBETROTTER II* as defendants in the Southern District of Texas action or any other action. Specifically, they argue that "claimants have not indicated which captain or crew they wish to sue, the grounds on which they wish to sue them, nor have they sued any of them in any proceeding."[48] Shell and the limitation petitioners cite Judge Vance's decision in *Archer Daniels Midland Co.* to support their argument that the relief requested by the Claimants is premature. There, as here, certain claimants sought to "clarify" or otherwise modify the stay in a limitation proceeding to allow a state court proceeding to go forward against the master and crew members of a vessel involved in a maritime casualty on the Mississippi River.[49] The court there concluded that the claimants' motion was "premature" because they had "not indicated which

---

[48] ECF No. 90 at 9.
[49] 2020 WL 10486336 at *1.

captains or crew—and  which the limitation petitioners—they wish to sue, or the grounds on which

they wish to sue them."[50] The court further noted that, to the extent "imputation of privity and

knowledge to the vessel owner would be an automatic consequence of a state court judgment this

could trench upon this court's exclusive power to decide that question."[51] The Court agrees with

the reasoning of *Archer Daniels Midland Co.* and DENIES the Claimants' request to clarify or

otherwise to modify the Restraining Order.

## III.
### CONCLUSION

For the foregoing reasons, the Court DENIES the Claimants' Motion to Clarify Scope of

Restraining Order [ECF No. 75].

THUS DONE in Chambers on this 29th day of July, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[50] *Id.* at *4.
[51] *Id.*